Jason Rhodes suffered multiple injuries in an automobile accident involving a vehicle driven by James Green, an uninsured motorist. At the time of the accident, Rhodes lived in a mobile home that he and his wife owned at 1047 Fields Road in Bessemer. Before moving to his own mobile home approximately two years before the accident, Rhodes had lived for a year in a mobile home that he rented; before that he had lived with his parents at 9361 Old Toadvine Road, Bessemer.
At the time of the accident, Rhodes had an automobile-insurance policy with Nationwide Insurance Company ("Nationwide"). Rhodes's father also had an automobile-insurance policy with Nationwide. After the accident, Rhodes sought coverage under the uninsured-motorist ("UM") portion of his own policy. After exhausting the coverage limits of his own policy, Rhodes attempted to obtain additional coverage under the UM limits of his father's Nationwide automobile-insurance policy. Nationwide denied Rhodes's claim under his father's policy, and Rhodes sued Nationwide seeking UM coverage under his father's policy.
Nationwide moved for a summary judgment; Rhodes then moved for a summary judgment. The parties stipulated that the only dispute between them was whether Rhodes qualified as a covered "relative" within the meaning of his father's automobile-insurance policy with Nationwide. The trial court entered a summary judgment for Rhodes, finding that the Nationwide insurance policy was ambiguous on that issue and awarding Rhodes $60,000 in UM benefits under his father's policy. Nationwide appeals. Because we find that the trial court erred in finding that the language of the Nationwide policy was ambiguous, we reverse and remand.
We review a trial court's summary judgment de novo, giving no presumption of correctness to the ruling by the trial judge. Gossett v.Twin County Cable TV, Inc., 594 So.2d 635, 638 (Ala. 1992). To grant a motion for a summary judgment, the court must determine that there is no genuine issue of material fact remaining between the parties and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P.; Mitchell v. Richmond, 754 So.2d 627, 628 (Ala. 1999). In this case, the parties have stipulated that no genuine issue of material fact remains. Therefore, the only issue before the trial court, and before this Court on its de novo review, is whether Rhodes is entitled to a judgment as a matter of law.
 "The issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide. McDonald v. U.S. Die Casting Dev. Co., 585 So.2d 853, *Page 697 
855 (Ala. 1991). `If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court. . . .' Id. . . .
 "'The test to be applied by [a] court in determining whether there is ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean.' Lee R. Russ Thomas F. Segalla, Couch on Insurance § 21:14, pp. 21-23 (3d ed. 1997). . . . In determining whether an ambiguity exists, a court should apply the common interpretation of the language alleged to be ambiguous. See Alabama Farm Bureau Mut. Cas. Ins. Co. v. Goodman, 279 Ala. 538, 541, 188 So.2d 268, 270 (1966). This means that the terms of an insurance policy should be given a rational and practical construction. Green v. Merrill, 293 Ala. 628, 308 So.2d 702 (1975). Also, a court cannot consider the language in the policy in isolation, but must consider the policy as a whole. Turner v. United States Fidelity Guar. Co., 440 So.2d 1026 (Ala. 1983)."
State Farm Fire Cas. Co. v. Slade, 747 So.2d 293, 308-09 (Ala. 1999).
The automobile-insurance policy Rhodes's father had with Nationwide included UM coverage for "relatives"; it defined "relative" to mean "one who regularly lives in your household and who is related to you by blood, marriage or adoption (including a ward or foster child.) A relative may live temporarily outside your household." The trial court determined that this definition was ambiguous and that it should therefore be construed against the drafter, Nationwide. Crossett v. St.Louis Fire Marine Ins. Co., 289 Ala. 598, 269 So.2d 869 (1972).
Rhodes presented the trial court with certain evidence he claimed proved that he "regularly live[d]" in his father's household and that he was therefore entitled to coverage under both his own UM coverage and the UM coverage in his father's policy. That evidence included evidence indicating that Rhodes slept at his parents' house, with or without his wife, approximately one night a month; that he occasionally ate meals at his parents' house; that he had a key to his parents' house and came and went as he pleased; that a room at his parents' house was designated as "his room" and that the furniture in that room was "his," though his father had paid for that furniture; that he still received mail at his parents' house; that he had not changed the address on his driver's license or voter's registration from his parents' address to the address of the mobile home he owned with his pregnant wife; and that he claimed to have a "present intention" to return to his parents' house.
Nationwide did not dispute the evidence Rhodes presented; rather, it disputed the inference to be drawn from that evidence. Nationwide points out that Rhodes stated in his deposition that he had been financially independent from his parents for several years; that he was a married, employed, 28-year-old man with a child on the way; and that even Rhodes's own testimony showed that Rhodes slept most nights in his own mobile home. As for Rhodes's claim that he had not changed the address on his driver's license to reflect his new address because, he said, he resided with his parents, Nationwide points out that Rhodes obtained the driver's license in 1999 while he still lived with his parents, and that in 2001 when the accident occurred the license had not yet come up for renewal. Also, we note that Rhodes's acquisition of his own automobile-insurance policy indicates his *Page 698 
understanding that he needed separate insurance from that of his parents.
This Court held in Davis v. State Farm Mutual Automobile InsuranceCo., 583 So.2d 225 (Ala. 1991), that the term "live with" as used in an insurance policy was ambiguous as a matter of law, and in Ex parteAmerican National Property Casualty Co., 742 So.2d 1212, 1214-15
(Ala. 1999), this Court held that the term "living in the same household" was likewise ambiguous. However, the Nationwide automobile-insurance policy in this case uses the term "regularly lives in your household," which Nationwide argues is a phrase that has been properly modified to clarify any previous ambiguity. In support of this argument, Nationwide cites Nationwide Mutual Insurance Co. v. Budd-Baldwin, 947 F.2d 1098,1102 (3d Cir. 1991), in which the United States Court of Appeals for the Third Circuit noted that "words of refinement" can modify ambiguous words so as to remove the ambiguity.
The Alabama Court of Civil Appeals in B.D.B. v. State Farm MutualAutomobile Insurance Co., 814 So.2d 877 (Ala.Civ.App. 2001), held that the modifier "primarily" clarified the ambiguity of the phrase "lives with you" so that the definition of a relative as "a person related to you or your spouse by blood, marriage, or adoption who lives primarily with you" was deemed not to be ambiguous. 814 So.2d at 879. In that case, the daughter, B.D.B., a minor whose primary physical custody was with her mother, was exercising scheduled visitation with her father when she was struck by a vehicle. The court determined that B.D.B. was not an "insured" under her father's policy because she was not "a person . . . who lives primarily with [her father]" even though she had visitation with her father two Saturdays a month and kept personal belongings at her father's house. Id. Rhodes argues that Nationwide's use of the word "regularly" to modify "lives with you" instead of the word "primarily" as did the policy at issue in B.D.B. distinguishes B.D.B. from his case. Nationwide's argument, however, that B.D.B. is significant not merely for its adoption of a particular word as a modifier but for its consideration of modifiers to clarify previously ambiguous terms is well-taken.
"Regularly" is defined by the Webster's Encyclopedic UnabridgedDictionary of the English Language (1989), as the adverbial form of "regular," which is defined as "usual, normal or customary." The Third Circuit Court of Appeals, considering the same phrase, held: "It appears to us that Nationwide heeded the Superior Court's suggestion . . . that insurers add `words of refinement' if they intend the term `residence' to mean something more than its common law definition." Budd-Baldwin, 947 F.2d at 1102. Because the phrase "regularly lives in your household" is an unambiguous contract term, this Court must give that phrase its common, everyday meaning and interpret it as a reasonably prudent person in the insured's position would have. See Alabama Farm Bureau Mut. Cas.Ins. Co. v. Goodman, 279 Ala. 538, 541, 188 So.2d 268, 270 (1966). We hold that the phrase "regularly lives in your household" is unambiguous, meaning someone who usually, normally, or customarily lives in the insured's household.
Adopting that definition, we cannot say that Rhodes "regularly lives" in his parents' household. His once-a-month overnight visits, occasional meals, and receipt of mail at his parents' house do not indicate that the Old Toadvine Road residence is his usual, normal, or customary residence. Rhodes has provided no evidence of his professed "present intent to return" to his parents' house, and the fact that he *Page 699 
and his wife own another residence where Rhodes admittedly spends the greatest portion of his time weighs strongly against any conclusion other than that his mobile home is his usual, normal, or customary residence.
Because the legal question of the ambiguity of the contract term "regularly lives in your household" was the only issue in dispute between the parties, the trial court incorrectly decided the question of law as to the ambiguity of the contract language and therefore incorrectly entered a summary judgment for Rhodes. We therefore reverse that judgment and remand the case for the trial court to enter a summary judgment for Nationwide. We need not address Rhodes's argument that this Court should consider the award of damages under another standard of review because we find no liability, as a matter of law, on Nationwide's part.
REVERSED AND REMANDED.
MOORE, C.J., and BROWN, HARWOOD, and STUART, JJ., concur.