882 So.2d 849 (2003)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
v.
Hugh HARRIS, III.
1020609.
Supreme Court of Alabama.
November 26, 2003.
Mark R. Ulmer of Ulmer, Hillman & Ballard, P.C., Mobile, for appellant.
George R. Irvine III, Shawn T. Alves, and R. Scott Lewis of Stone, Granade & Crosby, P.C., Bay Minette, for appellee.
PER CURIAM.
State Farm Mutual Automobile Insurance Company ("State Farm") appeals from the denial of its postjudgment motion styled as a "Motion for Reduction in Judgment Amount." The specific question presented in State Farm's motion was whether Hugh ("Bo") Harris III, a minor, was entitled to "stack" the uninsured-motorist-coverage benefits available under five automobile insurance policies issued to Bo's father, Hugh Harris, Jr., by State Farm. State Farm argued in the motion that Bo Harris did not fall within the definition of "relative" contained in the State Farm policies and, thus, that Bo Harris was not an *850 insured under those policies and the uninsured-motorist coverage could not be stacked.
The trial court held that Bo Harris was entitled to stack those coverages, and it refused to reduce, as State Farm requested, the judgment entered on the jury's verdict. We reverse and remand.

Facts
On September 24, 1999, Bo Harris was driving a Chevrolet S-10 truck owned by his father.[1] Bo's father had given Bo permission to operate the truck. On that same date, Fate Foley III was operating an automobile owned by his wife, Lana Foley. Foley failed to stop at a stop sign, and the automobile he was driving collided with the truck being driven by Bo Harris.
It is undisputed that Foley's negligence and/or wantonness caused the accident, and that, as a result of the accident, Bo Harris suffered serious injuries.[2] It is also undisputed that Fate Foley and Lana Foley were uninsured motorists, as that term is defined by Alabama law.
At the time of the accident, State Farm insured Hugh Harris's Chevrolet S-10 truck under policy number D26 9897-F09-01. That policy was in effect on the date of the accident.[3] In separate policies, State Farm also insured four other vehicles owned by Hugh Harris; those policies were also in effect on the date of the accident.
Each of the insurance policies issued by State Farm to Hugh Harris contained the following pertinent provisions relating to uninsured-motorist coverage:
"We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by an accident arising out of the operation, maintenance or use of an uninsured motor vehicle.
"....
"Who Is an Insured
"Insured  means the person or persons covered by uninsured motor vehicle coverage.
"This is:
"1. The first person named in the declarations;
"2. his or her spouse;
"3. their relatives;
"4. any other person while occupying:
"a. your car, a temporary substitute car, a newly acquired car or a trailer attached to such car. Such vehicle has to be used within the scope of the consent of you or your spouse; or
"b. a car not owned by you, your spouse or any relative, or a trailer attached to such a car. It has to be driven by the first person named in the declarations or that person's spouse and within the owner's consent.
"Such other person occupying a vehicle used to carry persons for a charge is not an insured.

*851 "5. any person entitled to recover damages because of bodily injury to an insured under 1 through 4 above."
(Emphasis omitted.) In the policies issued to Hugh Harris, "relative" was originally defined to mean "a person related to you or your spouse by blood, marriage or adoption who lives with you. It includes your unmarried and unemancipated child away at school." (Emphasis added; boldface type omitted.) In a later endorsement, State Farm amended the definition of "relative" to read: "a person related to you or your spouse by blood, marriage or adoption who lives primarily with you. It includes your unmarried and unemancipated child away at school." (Emphasis added; boldface type omitted.)
Donna Robinson, as mother and next friend of Bo Harris, sued Fate Foley and Lana Foley.[4] Robinson alleged that Fate Foley had negligently or wantonly operated the vehicle he was driving. Robinson also alleged that Lana Foley had negligently or wantonly entrusted her vehicle to Fate Foley. Robinson sought to recover compensation for Bo Harris's medical expenses, his permanent injuries, and his pain and suffering. She also sought punitive damages.
State Farm filed a motion to intervene in the case. The trial court granted the motion, and State Farm answered Robinson's complaint. State Farm deposited with the clerk of the circuit court the sum of $25,000, which State Farm alleged was the maximum Bo Harris was entitled to recover under the uninsured-motorist coverage available under Hugh Harris's policy with State Farm insuring the Chevrolet S-10 truck. This amount represented the limits of the uninsured-motorist coverage provided under State Farm automobile policy D26 9897-F09-01, the policy issued on the Chevrolet S-10 pick-up truck being operated by Bo Harris at the time of the accident.
State Farm subsequently sought a partial summary judgment, relying on Bo Harris's deposition testimony in which he stated that he lived primarily with his mother. State Farm argued that because Bo Harris did not live primarily with his father, he did not meet the definition of "relative" contained in the insurance policies issued to Hugh Harris. State Farm argued that because Bo Harris did not fall within any definition of "insured,"[5] he was not entitled to stack the uninsured-motorist coverage available under the insurance policies issued by State Farm on Hugh Harris's four other vehicles. Robinson opposed this motion and filed her own motion for a partial summary judgment, arguing, on various grounds, that Bo Harris was entitled to stack the coverage available under those policies.
The trial court subsequently denied State Farm's motion for a partial summary judgment and granted Robinson's motion for partial summary judgment, holding that Bo Harris was entitled to stack the uninsured-motorist coverage available under his father's five State Farm insurance policies.[6]
On November 6, 2000, Robinson's claims alleging negligence and wantonness as to *852 Fate Foley were tried before a jury.[7] The jury returned a verdict in favor of Bo Harris in the amount of $121,800 in compensatory damages and $7,000 in punitive damages. On November 7, 2002, the trial court entered a judgment on that verdict.
On November 15, 2002, State Farm filed its postjudgment motion styled as a "Motion for Reduction in Judgment Amount." In that motion, State Farm again argued that, because Bo Harris did not live primarily with Hugh Harris, he could not meet the definition of an "insured." State Farm argued that Bo Harris was therefore entitled to recover uninsured-motorist benefits under only the insurance policy applicable to Hugh Harris's Chevrolet S-10 truck and that he was not entitled to stack the uninsured-motorist coverage available under the four other State Farm policies issued to Hugh Harris. For these reasons, State Farm requested that the trial court reduce the judgment to $25,000. The trial court denied the motion. State Farm appealed.

Standard of Review
The only issue presented in this appeal is whether the minor plaintiff, Bo Harris, meets the definition of "relative" in the State Farm policy; in order to decide that issue we must construe the meaning of that term. The interpretation of an insurance contract presents a question of law. See Holt v. State Farm Mut. Auto. Ins. Co., 507 So.2d 388 (Ala.1986). We review de novo a trial court's conclusions of law. Reynolds Metals Co. v. Hill, 825 So.2d 100, 106 (Ala.2002).

Analysis
Each of the policies contains the same definition of a "relative," i.e., "a person related to you or your spouse by blood, marriage or adoption who lives primarily with you...." (Emphasis added; boldface type omitted.) State Farm contends that Bo Harris was not "liv[ing] primarily" with his father at the time of the accident. The record reflects that Bo Harris's father and mother were divorced and that they had joint custody of Bo. His father lived in Stapleton and his mother lived in Daphne. In deposition testimony included in the record, Bo Harris testified that he was living with his mother at the time of the accident. He described his living arrangements as follows:
"Q. Now, how long had you been living with your mom prior to the accident?
"A. They had joint custody. I lived with my mom two weeks and lived with my dad two weeks supposedly, but I stayed with my mom more that I did my dad.
"Q. Okay. With the divorce decree saying joint custody, that means both parents have equal right to have you stay with them basically, so I guess the initial agreement was two weeks with your mom and then moved over to your dad's for two weeks.
"A. Yes, sir.
"Q. If I understand you are telling me basically that's not the way it was really working out at the time?
"....
"A. Right.
"Q. During the course of any given month to 30 days, how many days during the month were you living with your mom versus your dad at the time this accident took place and immediately prior?

*853 "A. I probably stayed with my dad seven or eight days out of the month.
"Q. Would this be on weekends or how would that work out of the month?
"A. I probably stayed with my dad seven or eight days out of the month.
"Q. Would this be on weekends or how would that work out schedule-wise?
"A. It kind of just depended on when I felt like staying with him.
"Q. Okay. Well, tell me how that went. I mean, only you can tell me how it went.
"A. Well, sometimes I would go down there just to see him because, you know, I don't see him that often so I decided to go see him. Because I kind of missed him sometimes."
Bo testified that in the few months before the accident there were no specific times scheduled for him to visit with his father and that he saw his father irregularly. Bo testified that he had his own room at both his mother's house and his father's house, and that he "had a stereo at both places and, you know, permanent stuff like that." However, he added, "[m]y clothes, most of it stayed at my mom's. When I went to my dad's I had a little bag that I'd take stuff in."
In B.D.B. v. State Farm Mutual Automobile Insurance Co., 814 So.2d 877 (Ala.Civ.App.2001), the Alabama Court of Civil Appeals addressed this very provision in a State Farm automobile insurance policy. In construing this provision in light of the facts of that case, the court in B.D.B. reached a different conclusion than did the trial court in this case. In B.D.B., the Court of Civil Appeals, in a 3-2 decision, concluded:
"The policy in this case defines `relative' as one `who lives primarily with you.' We do not disagree with the proposition that a child of separated or divorced parents may be regarded as a resident of the household of both parents, and, if this policy had different language, then we might reach a very different result here. The language in this policy, however, is clear and unambiguous. Our careful review of the record, viewed in the light most favorable to B.D.B., requires the conclusion that B.D.B. does not primarily live with her father. The fact that B.D.B. kept personal items at her father's house and spent two Saturdays a month with him does not compel the conclusion that she lived primarily with him."
814 So.2d at 881.
This Court, in the recent case of Nationwide Insurance Co. v. Rhodes, 870 So.2d 695 (Ala.2003), addressed an issue very similar to one now before us. In Rhodes, this Court determined that a motorist was not a covered "relative" within the meaning of the father's automobile insurance policy and thus could not receive uninsured-motorist benefits under that policy. The automobile insurance policy at issue in Rhodes defined the term "relative" to mean "one who regularly lives in your household and who is related to you by blood, marriage or adoption (including a ward or foster child.) A relative may live temporarily outside your household." 870 So.2d at 697.
In Rhodes, this Court discussed the holdings in Davis v. State Farm Mutual Automobile Insurance Co., 583 So.2d 225 (Ala.1991), in which this Court held that the term "live with" as used in an insurance policy was ambiguous as a matter of law, and Ex parte American National Property & Casualty Co., 742 So.2d 1212, 1214-15 (Ala.1999), in which this Court held that the term "living in the same household" was likewise ambiguous.
However, the Rhodes Court pointed out that the use of the modifier "regularly" *854 clarified the ambiguity of the phrase "lives with you." Therefore, the Court found that, unlike the terms in the insurance policies discussed in Davis v. State Farm Mutual Automobile Insurance Co. and Ex parte American National Property & Casualty Co., the definition of a relative as "one who regularly lives in your household and who is related to you by blood, marriage or adoption," as used in the Nationwide policy, was not ambiguous.
The Rhodes Court concluded by stating:
"We hold that the phrase `regularly lives in your household' is unambiguous, meaning someone who usually, normally, or customarily lives in the insured's household.
"Adopting that definition, we cannot say that Rhodes `regularly lives' in his parents' household. His once-a-month overnight visits, occasional meals, and receipt of mail at his parents' house do not indicate that the Old Toadvine Road residence is his usual, normal, or customary residence. Rhodes has provided no evidence of his professed `present intent to return' to his parents' house, and the fact that he and his wife own another residence where Rhodes admittedly spends the greatest portion of his time weighs strongly against any conclusion other than that his mobile home is his usual, normal, or customary residence."
870 So.2d at 698-99.
In this case, as in B.D.B., we must construe the modifier "primarily" as it applies to the phrase "lives with you [the insured]." We note that Merriam-Webster's Collegiate Dictionary (11th ed.2003) defines the word "primarily" to mean "for the most part" or "chiefly." Although this Court has held that a person may "live" in more than one place for purposes of uninsured-motorist coverage, see Davis v. State Farm Mutual Automobile Insurance Co., supra, we fail to see how a person may "primarily" or "for the most part" live in more than one place at one time. Because at the time of the accident Bo Harris lived "for the most part" with his mother, he could not also "live primarily with" his father.
We conclude that the trial court erred in finding that Bo Harris was a "relative," as that term is defined in the State Farm insurance policies. Because Bo Harris did not fall within the definition of the term "relative" or under any other definition of "insured," he was not entitled to stack the uninsured-motorist coverage available in the insurance policies issued to Hugh Harris by State Farm. See Bright v. State Farm Ins. Co., 767 So.2d 1111 (Ala.2000) (named insured's employee could not stack underinsured-motorist coverage under policies on employer's other vehicles that were not involved in accident, where the employee did not occupy those vehicles and he was not included within any of those categories defined as "insureds" except as an occupant of the vehicle involved in the accident); Travelers Ins. Co. v. Jones, 529 So.2d 234 (Ala.1988) (even though passengers were not named insureds, they could stack uninsured-motorist coverage because they came within the definition of "insured" under the terms of the uninsured-motorist portion of the policy and there was additional coverage for another automobile within the same insurance contract); White v. Georgia Cas. & Sur. Ins. Co., 520 So.2d 140 (Ala.1987) (a company employee, designated in the primary liability section of the insurance policy as one who is "insured thereunder," was allowed to stack uninsured-motorist coverage under the company's fleet policy; the passenger was held not be "insured thereunder" and was not allowed to stack uninsured-motorist coverage).
*855 The trial court improperly denied State Farm's postjudgment motion. We reverse and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
HOUSTON, J., dissents.
HOUSTON, Justice (dissenting).
Bo Harris's parents had joint custody; under the terms of the custody arrangement, Bo was supposed to spend equal time with each parent. Each parent had a room in his or her house that was Bo's room, in which he kept clothes and other personal belongings such as stereo equipment. The parents lived in different towns, and the son used his father's address to enroll in the school he attended. The child spent more time sleeping at his mother's house than he did at his father's. I cannot hold that the record plainly shows that the trial court erred in failing to grant State Farm's postjudgment motion. The trial court could have determined that the time Bo spent at school was time spent as a resident in his father's house.
NOTES
[1] Because the only issue involved in this appeal is whether Bo Harris was entitled to stack the uninsured-motorist coverage in his father's insurance policies, we limit the statement of facts to those involving only Bo Harris.
[2] Harris was transported from the scene of the accident by helicopter to the University of South Alabama Medical Center for treatment. He underwent a variety of medical treatments, including surgery on his right ankle.
[3] The policy was issued to "Deborah and Hugh Harris." Hugh Harris is married to Deborah Harris.
[4] Apparently during the pendency of this action, Bo Harris reached the age of majority. Although nothing in the record indicates when that happened, State Farm named "Hugh Harris III" as the appellee when it filed its notice of appeal.
[5] Bo Harris did not meet any of the other categories of "insured" in the policies.
[6] The trial court provided no grounds for its orders; neither party sought to appeal from their respective orders.
[7] Lana Foley filed a motion for a summary judgment on Robinson's claim that Lana Foley negligently and/or wantonly entrusted her vehicle to her husband, Fate Foley III. The trial court granted the motion. That summary judgment is not at issue in this appeal.