BT Securities Corporation, Chase Manhattan Bank, Salomon Brothers, Inc., Deloitte Touche LLP, and Arthur Andersen LLP petitioned this Court for permission to appeal, pursuant to Rule 5, Ala. R.App. P., from the trial court's denial of their motion to dismiss an action pending against them. We granted permission to appeal, and we reverse the order denying their motion and render a judgment for them.
 Facts and Procedural History
This case involves the applicability of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"),15 U.S.C. §§ 77p and 78bb, to a purchase of subordinated notes by W.R. Huff Asset Management Co., L.L.C., from BT Securities Corporation. On August 10, 1995, Bruno's, Inc., issued $400 million of high-yield subordinated notes. Huff, an investment management *Page 312 
company, purchased $290 million of those notes on behalf of its customers in November 1995. On February 2, 1998, Bruno's and its subsidiaries filed a petition in bankruptcy in the District of Delaware under Chapter 11 of the Bankruptcy Code. See In re PWSHolding Corp., No. 98-212 (Bankr.D.Del., Dec. 30, 1999),aff'd, 228 F.3d 224 (3d Cir. 2000).
On August 4, 1999, Huff sued Kohlberg Kravis Roberts Co., L.P., the company that acquired control of Bruno's in 1995, in the Jefferson Circuit Court. The action related to Kohlberg's participation in Bruno's recapitalization. Kohlberg had the case removed to the United States Bankruptcy Court for the Northern District of Alabama because of Bruno's pending bankruptcy proceeding in Delaware. Huff moved the bankruptcy court to remand the action to state court, and on January 4, 2001, the bankruptcy court transferred the case to the United States District Court for the Northern District of Alabama. On July 1, 2002, Huff moved the district court to remand the case to state court, but the district court determined that Huff's claims were preempted by SLUSA and dismissed Huff's claims without prejudice. See W.R.Huff Asset Mgmt. Co. v. Kohlberg Kravis Roberts Co.,234 F.Supp.2d 1218, 1227 (N.D.Ala. 2002) ("Huff I").
In the meantime, on April 28, 2000, Huff filed a second action involving the Bruno's notes, from which this permissive appeal is taken. Huff sued BT Securities Corporation, Chase Manhattan Bank, Salomon Brothers, Inc., Deloitte Touche LLP, and Arthur Andersen LLP (collectively "BT Securities") in the Jefferson Circuit Court, alleging that BT Securities had engaged in fraud and misrepresentation in connection with the sale of the Bruno's notes. BT Securities removed the case to the United States District Court for the Northern District of Alabama. Huff moved the district court to remand the case to the state court. The district court, in an earlier unpublished opinion, found that "SLUSA was Huff's exclusive avenue for relief, found the existence of a federal question, and therefore denied Huff's motion to remand." It encouraged Huff to request the United States Court of Appeals for the Eleventh Circuit to accept an appeal pursuant to 28 U.S.C. § 1292(b) (authorizing an interlocutory appeal). W.R. Huff Asset Mgmt., Co., L.L.C. v. BTSec. Corp., 190 F.Supp.2d 1273, 1274 (N.D.Ala. 2001) ("HuffII"). Huff moved the Eleventh Circuit Court of Appeals to accept its appeal; the Eleventh Circuit declined to do so.
Huff then moved the district court to reconsider its decision that SLUSA controlled its claims, or, alternatively, to sever the case as to one defendant, Deloitte Touche, and remand, or, alternatively, to grant it leave to amend its complaint. BT Securities moved the district court to dismiss the action. On May 22, 2001, the district court determined that it lacked jurisdiction over Huff's action and remanded the cause to state court. Huff II, 190 F.Supp.2d at 1275.
On remand to the state court, BT Securities moved to dismiss Huff's action because, it argued, SLUSA preempted all of its claims. On March 31, 2003, the circuit court denied BT Securities' motion to dismiss. BT Securities petitioned this Court for a permissive appeal pursuant to Rule 5, Ala. R.App. P. On May 22, 2003, this Court granted BT Securities' petition for a permissive appeal as to the circuit court's denial of its motion to dismiss.
 Standard of Review
This Court reviews de novo a trial court's conclusions of law.See State Farm Mut. Auto. Ins. Co. v. Harris, 882 So.2d 849,852 (Ala. 2003). *Page 313 
 "The appropriate standard of review of a trial court's denial of a motion to dismiss is whether `when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [the pleader] to relief.' Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993); Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641
(Ala. 1985). This Court does not consider whether the plaintiff will ultimately prevail, but only whether the plaintiff may possibly prevail. Nance, 622 So.2d at 299. A `dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.' Nance, 622 So.2d at 299; Garrett v. Hadden, 495 So.2d 616, 617 (Ala. 1986); Hill v. Kraft, Inc., 496 So.2d 768, 769
(Ala. 1986)."
Lyons v. River Road Constr., Inc., 858 So.2d 257, 260 (Ala. 2003).
 Application of SLUSA
The issue presented to this Court is whether the circuit court erred in denying BT Securities' motion to dismiss based on its conclusion that Huff's claims against BT Securities were not preempted by SLUSA. SLUSA mandates that "covered class actions" brought pursuant to state law must be removed to federal court.See 15 U.S.C. § 77p(c) (requiring that "[a]ny covered class action brought in any State court involving a covered security . . . shall be removable to the Federal district court for the district in which the action is pending"); see also15 U.S.C. § 78bb(f)(5)(E) (defining a "covered security" to mean "a security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 18(b) of the Securities Act of 1933, at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred"). Section 78bb(f)(5)(B) defines a "covered class action" as follows:
"(i) any single lawsuit in which —
 "(I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any question affecting only individual persons or members; or
 "(II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and the questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or
 "(ii) any group of lawsuits filed in or pending in the same court involving common questions of law or fact, in which —
 "(I) damages are sought on behalf of more than 50 persons; and
 "(II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose."
Thus, for actions that fall within SLUSA, the federal court is the exclusive venue for securities fraud class-action litigation.See Huff II, 190 F.Supp.2d at 1278 ("subsection (b) [of15 U.S.C. § 77p] compels a dismissal of actions based on state law if they allege fraud, deception, or misrepresentation regarding the purchase or sale of securities traded, or authorized to be traded, nationally").
 "Under SLUSA, a securities action is preempted only if four conditions are *Page 314 
satisfied: (1) the action is a `covered class action,' (2) the claims are based on state law, (3) the action involves a `covered security,' and (4) the claims allege a misrepresentation or omission of material fact `in connection with the purchase or sale' of the security."
In re WorldCom, Inc. Sec. Litig., 308 F.Supp.2d 236, 243
(S.D.N.Y. 2004) (quoting 15 U.S.C. § 77p(b)). Huff concedes that this action is a covered class action pursuant to15 U.S.C. § 78bb(f)(5)(B); that its claims are based on Alabama state law; and that its claims allege a misrepresentation or omission of material fact in connection with the purchase or sale of the Bruno's notes. Huff argues, however, that the Bruno's notes were not "covered securities" as that term is defined by15 U.S.C. § 78bb(f)(5)(E). To determine whether a security is a "covered security," we must determine whether the security was traded nationally or was authorized to be traded nationally at the time of the alleged wrongful conduct. See 15 U.S.C. § 78bb(f)(5)(E) (defining a "covered security" as a security traded nationally or authorized to be traded nationally "at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred"). Thus, the inquiry is whether at the time of the alleged wrongful conduct the Bruno's notes were "covered securities" as that term is defined by15 U.S.C. § 78bb(f)(5)(E).
Section 78bb(f)(5)(E) adopts the definition of a covered security in § 18(b) of the Securities Act of 1933, codified at15 U.S.C. § 77r(b). Section 77r(b)(1) defines a covered security as follows:
 "A security is a covered security if such security is —
 "(A) listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed, or authorized for listing, on the National Market System of the Nasdaq Stock Market (or any successor to such entities);
 "(B) listed, or authorized for listing, on a national securities exchange (or tier or segment thereof) that has listing standards that the Commission determines by rule (on its own initiative or on the basis of a petition) are substantially similar to the listing standards applicable to securities described in subparagraph (A); or
 "(C) is a security of the same issuer that is equal in seniority or that is a senior security to a security described in subparagraph (A) or (B)."
Huff concedes that because Bruno's common stock was listed on the National Association of Securities Dealers Automated Quotations ("NASDAQ") stock exchange and because the Bruno's notes were senior to Bruno's common stock, the Bruno's notes would be a covered security under § 77r(b)(1)(C).
However, Huff argues that at the time Huff began to purchase the Bruno's notes it was not a covered security because Bruno's common stock was no longer listed on the NASDAQ stock exchange. Thus, Huff's argument is that while the Bruno's notes could be considered a covered security when the Bruno's common stock was listed on the NASDAQ stock exchange, the Bruno's notes, at the time Huff purchased them, were not a covered security because Huff purchased the Bruno's notes after Bruno's common stock was removed from the list of stocks on the NASDAQ stock exchange on August 18, 1995. However, Huff's argument fails because § 78bb(f)(5)(E) states that the time it is determined whether a security is a "covered security" is "at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct *Page 315 
occurred." The majority of the allegedly wrongful conduct by BT Securities occurred before the Bruno's common stock was removed from the NASDAQ stock exchange on August 18, 1995. While Huff did not purchase the Bruno's notes until November 1995, Huff states in its complaint that "in reliance on the Prospectus and other disclosures made by the defendants" it purchased the Bruno's notes. Because Huff's complaint acknowledges that it purchased the notes in reliance upon the prospectus, which was dated August 10, 1995, and upon other representations, occurring before its decision to purchase the stock in November, the majority of those events occurred while Bruno's common stock was listed on the NASDAQ stock exchange. Thus, because the allegedly wrongful conduct occurred while the Bruno's common stock was listed, Bruno's common stock qualifies as a covered security pursuant to15 U.S.C. § 77r(b)(1) and the Bruno's notes would also be considered a covered security under 15 U.S.C. § 77r(b)(1)(C).
It does not appear from the record that Huff raised this argument previously in this action or in Huff I, because the district courts in both cases decided the question of SLUSA preemption, which would have been unnecessary had either court determined that the Bruno's notes were not covered securities.See Huff I, 234 F.Supp.2d at 1219, and Huff II,190 F.Supp.2d at 1274.
 Preemption of Huff's Claims
In this case, the circuit court denied BT Securities' motion to dismiss, finding that Huff's claims were not preempted by SLUSA because the alleged wrongful conduct occurred before the enactment of SLUSA in 1998. The circuit court reasoned that SLUSA did not apply retroactively to Huff's claims because the preemptive provisions of SLUSA "did not take effect until November 3, 1998," and "the conduct which serves as a basis for the action predated the enactment of the said amendments." Thus, the circuit court determined that "retroactive application [of SLUSA] in this case not only destroys a remedy but a right." The circuit court's conclusion is consistent with the federal district court's conclusion in this case before its remand of the case to the state court. See Huff II, 190 F.Supp.2d at 1274.
However, the circuit court's findings in this case directly conflict with the findings made by the federal district court inHuff I. See Huff I, 234 F.Supp.2d at 1219. In Huff I, the district court concluded that Huff's claims were preempted because SLUSA applied retroactively to its claims and that retroactive application of SLUSA did not "impair Huff's substantive rights to pursue its claims: SLUSA merely requires that Huff proceed in federal court under federal law if Huff and its customers elect to pursue their claims in a form that qualifies as a covered class action." Huff I,234 F.Supp.2d at 1225. The district court reasoned:
 "[W]hen Congress enacted SLUSA on November 3, 1998, it gave notice to Huff that representative state law claims were eliminated. At that time Huff could have filed an action in federal court under federal law, but chose to wait until August 4, 1999, to assert state law fraudulent transfer claims against [Kohlberg]. . . . Huff made a distinct tactical choice in attempting to bring state law claims against [Kohlberg]. Any consequences that follow from such a choice are attributable to Huff's desire to invoke a particular mode of procedure and do not constitute an abrogation of Huff's substantive rights."
Huff I, 234 F.Supp.2d at 1225.
Since the federal district court's decision to remand the case in Huff II based on the *Page 316 
district court's conclusion that Huff's claims were not preempted by SLUSA, a number of courts have held that SLUSA applies to actions filed after the enactment of SLUSA on November 3, 1998, that involved pre-enactment conduct. Those courts reasoned that SLUSA does not involve a substantive right, but a mode of procedure. See, e.g., Huff I, 234 F.Supp.2d at 1226 ("SLUSA applies retroactively to actions filed subsequent to enactment based on pre-enactment conduct"); Gray v. Seaboard Sec., Inc.,241 F.Supp.2d 213, 218 (N.D.N.Y. 2003) ("Plaintiffs' lawsuit in this case was filed in August of 2002, well after the enactment of SLUSA. While some of the conduct complained of in the instant action predates SLUSA's enactment, the weight of authority suggests that the relevant conduct is the filing of the lawsuit, not the conduct allegedly giving rise to liability. Accordingly, the Court find[s] that this case does not raise any retroactivity concerns and that SLUSA therefore applies to this present action." (footnote omitted)); In re BankAmerica Corp. Sec.Litig., 95 F.Supp.2d 1044, 1046 n. 2 (E.D.Mo. 2000) (stating that SLUSA "does not apply to suits filed prior to November 3, 1998, the effective date of [SLUSA]"); In re Enron Corp. Sec.,Derivative "Erisa" Litig., No. MDL-1446 (S.D.Tex., Aug. 16, 2002) (not published in F.Supp.) ("SLUSA exemplifies a rule of procedure that regulates secondary rather than primary conduct, the plaintiff's filing and prosecution of the litigation, as opposed to the defendant's allegedly unlawful conduct. Liability under the statute is based on the same kind of activities by a defendant as existed before SLUSA's enactment. What SLUSA eliminates is a state-court forum for class actions arising from securities violations under state law pursuant to Congress' right, under the Supremacy Clause, to impose uniform and stringent pleading standards in such suits in an effort to eliminate abusive litigation and to prevent plaintiffs from evading the protections of federal law.").
The United States Court of Appeals for the Eighth Circuit recently addressed the application of SLUSA to conduct occurring before its enactment:
 "The mere fact that the challenged conduct occurred before the statute's enactment does not mean the statute operates retroactively. . . . Landgraf v. USI Film Prods., 511 U.S. 244, 269, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). There is generally no retroactivity concern when a new procedural rule goes into effect after a cause of action accrues, but before filing of a lawsuit based on pre-enactment conduct. Id. at 275, 114 S.Ct. 1483. `Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule [is] instituted after the conduct giving rise to the suit does not make application of the rule 
retroactive.' Id."
See Professional Mgmt. Assocs., Inc. Employees' Profit SharingPlan v. KPMG, LLP, 335 F.3d 800, 803 (8th Cir. 2003). The Eighth Circuit Court of Appeals then held that "SLUSA applies to all actions commenced after its enactment, even if the challenged conduct predates SLUSA," id., and cited Huff I.
Based on the foregoing decisions, we conclude that Huff's ability to bring a covered class action is a matter of procedure, not a substantive right; therefore, we hold that SLUSA applies to and preempts Huff's claims.[1] *Page 317 
 Conclusion
Because Huff's claims are preempted by SLUSA, the circuit court erred in denying BT Securities' motion to dismiss. Therefore, we reverse the circuit court's order denying BT Securities' motion to dismiss and render a judgment for BT Securities dismissing Huff's state-court action.
REVERSED AND JUDGMENT RENDERED.
HOUSTON, BROWN, HARWOOD, and STUART, JJ., concur.
[1] This Court is not bound by the district court's decision to remand Huff II to the state court. See In re Loudermilch,158 F.3d 1143, 1146 (11th Cir. 1998) ("[A] district court's decision on the motion to remand has no preclusive effect on the state court's resolution of respondents' preemption defense in the same case.").