[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13300
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 29, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:10-cv-00192-KD-B


VAN P. FINGER,

                                                    Plaintiff - Appellee,

                           versus

STATE FARM FIRE AND CASUALTY INSURANCE COMPANY,

                                                    Defendant - Appellant.


_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(February 29, 2012)

Before CARNES, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

State Farm Fire and Casualty Insurance Company appeals an order of the

district court denying State Farm's motion for summary judgment and rendering summary judgment in favor of Van P. Finger on his breach-of-contract claim. After thorough review, we reverse and remand with instructions.

I.

In May 2007, State Farm issued a personal liability umbrella policy to Finger. The policy obligated State Farm to pay up to $2 million for the net loss amount Finger might become legally obligated to pay as damages for "personal injury." The policy defined "personal injury" as "injury caused by one or more of the following offenses . . . libel, slander, defamation of character or invasion of rights of privacy." Although the policy did not define each offense, it contained several exclusions from coverage, one of which stated that State Farm would not provide insurance "for personal injury when you act with specific intent to cause harm or injury."

In May 2008, Thomas Weller sued Finger for slander. State Farm defended Finger against Weller's claim under a reservation of rights. The trial court, upon agreement of the parties, applied Georgia law to the slander case. And, at the joint request of counsel, the trial court's verdict form asked the jury, if it found Finger liable, whether Finger acted with specific intent to harm Weller. The jury returned a verdict in favor of Weller on his slander claim, finding that Finger acted with

2

specific intent to harm Weller. The trial court entered judgment in favor of Weller.

After the jury's verdict, State Farm denied coverage of the judgment, citing its exclusion for "personal injury when you act with specific intent to cause harm or injury." As a result, in March 2010, Finger filed a complaint against State Farm alleging breach of contract and demanding a declaratory judgment regarding State Farm's coverage of Weller's judgment. State Farm removed the case to federal district court, based on diversity jurisdiction.

The parties filed cross-motions for summary judgment on Finger's breach of contract claim. The district court denied State Farm's motion and granted Finger's motion, finding that the policy made coverage for slander claims ambiguous or illusory, and construing the ambiguity in favor of Finger.[1] Following a subsequent bench trial, the district court found in favor of State Farm on Finger's bad faith claim and set damages for the breach of contract claim in the amount of $785,311.33, plus interest. State Farm now appeals from the district court's summary judgment order.

_____

[1] Before the parties' cross-motions for summary judgment, Finger amended his complaint to include a bad faith claim against State Farm. After the court resolved the motions for summary judgment, it held a bench trial on the bad faith claim and ultimately found in favor of State Farm on that claim. The court also set damages for Finger's breach-of-contract claim in the amount of $785,311.33, plus interest.

3

## II.

"We review a grant of summary judgment by a district court *de novo*." *Gish v. Thomas*, 516 F.3d 952, 954 (11th Cir. 2008). "We apply the same legal standards as the district court and view all facts and reasonable inferences in the light most favorable to the nonmoving party." *Id.*

Although Geogia law applied to the underlying slander case, the parties agree that Alabama substantive law governs the policy's interpretation because State Farm issued the policy to Finger in Alabama. *Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004). Under Alabama law, the insured bears the burden of establishing coverage by showing that his claim falls within the policy, and the insurer bears the burden of proving the applicability of a policy exclusion. *N. River Ins. Co. v. Overton*, 59 So. 3d 1, 5 (Ala. 2010) (insured's burden); *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 697 (Ala. 2001) (insurer's burden).

## III.

"The issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide." *Nationwide Ins. Co. v. Rhodes*, 870 So. 2d 695, 696 (Ala. 2003) (internal quotation marks omitted). "In determining whether an ambiguity exists, a court should apply the common interpretation of the language

4

alleged to be ambiguous." *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 799 (Ala. 2002). "This means that the terms of an insurance policy should be given a rational and practical construction." *Id.* Critically, "a court cannot consider the language in the policy in isolation, but must consider the policy as a whole." *Id.*; *see also St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co.*, 572 F.3d 893, 898 (11th Cir. 2009) (same, applying Alabama law). "[W]e must interpret insurance policies to give meaning and effect, if possible, to every word and phrase in the contract and cannot adopt a construction which neutralizes any provision." *Royal Ins. Co. of America v. Thomas*, 879 So. 2d 1144, 1155 (Ala. 2003) (internal quotation marks omitted).

If, after the court considers the practical construction of the entire policy, a provision is ambiguous, the ambiguity "must be resolved against the insurance company." *Safeway Ins. Co. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). And if a policy includes "limitations or exclusions [that] completely contradict the insuring provisions," coverage is deemed illusory and the insurer must cover the insured. *Shrader v. Emp'rs Mut. Cas. Co.*, 907 So. 2d 1026, 1033 (Ala. 2005) (internal quotation marks omitted). But "it is equally well settled that in the absence of statutory provisions to the contrary, insurers have the right to limit their liability by writing policies with narrow coverage." *St. Paul Mercury Ins. Co. v.*

*Chilton-Shelby Mental Health Ctr.*, 595 So. 2d 1375, 1377 (Ala. 1992).

The policy at issue here does not define "slander." Finger contends, and the district court agreed, that the ordinary meaning of slander involves an intent to harm. The district court cited a dictionary definition of slander, historical accounts of slander, and a treatise that classifies slander as an intentional tort. Based on this evidence, the court found that coverage for slander was illusory because the policy excepts from coverage slander if Finger has "specific intent to cause harm or injury."

We are not similarly persuaded. Although it is true that, in general, "[t]he court should not define words . . . based on technical or legal terms," *Herrera*, 912 So. 2d at 1143, here the word itself is a legal term. And it is clearly included in a list of other personal injury causes of action. *See Lambert v. Coregis Ins. Co.*, 950 So. 2d 1156, 1162 (Ala. 2006) ("[T]he definitions of the words [in an insurance policy] must be interpreted in relation to the term they are used to define."). "Slander," when included in a list of personal injury claims, is defined by the elements that make it actionable.

Under Georgia law, slander arises from "[m]aking charges against another in reference to his trade, office, or profession, calculated to injure him therein." O.C.G.A. § 51-5-4(a)(3). The phrase "calculated to injure" refers to the

statement's injuriousness, not to the speaker's intent. O.C.G.A. § 51-5-5. Indeed, "the defendant's subjective state of mind or intentions towards the plaintiff are irrelevant" in determining whether the statement amounted to slander. *Schafer v. Time, Inc.*, 142 F.3d 1361, 1367 (11th Cir. 1998) (construing O.C.G.A. § 51-5-5).

Furthermore, these elements are the same for slander under Alabama law and in many other states. *See Butler v. Town of Argo*, 871 So. 2d 1, 16 (Ala. 2003) ("To establish a prima facie case of defamation, the plaintiff must show that the defendant was at least negligent in publishing a false and defamatory statement to another concerning the plaintiff . . . ." (internal quotation marks and citation omitted)); Restatement (Second) of Torts § 580B (stating that a person is liable for a false statement only if he "knows that the statement is false and that it defames the other," "acts in reckless disregard of these matters," or "acts negligently in failing to ascertain them.").

Thus, the ordinary meaning of slander as a personal injury claim includes an element of intent regarding the falsity of the statement, but not regarding the harm or injury. And, accordingly, the insurance policy is not illusory because it covers liability for slander, regardless of Finger's intent regarding the falsity of the statement, and only excludes this liability from coverage if Finger also acted with specific intent to harm or injure. The exclusion limits but does not contradict the

7

covering provision.

Finger's arguments to the contrary do not give the policy "a rational and practical construction." *Porterfield*, 856 So. 2d at 799. His proposed interpretation would apply the exclusionary provision to all slander claims, thereby depriving the covering provision of meaning. But if the policy, taken as a whole, may be read such that each provision has meaning, we will enforce it as written. *Thomas*, 879 So. 2d at 1155; *see also State Farm Fire & Cas. Co. v. Wonderful Counselor Apostolic Faith Church*, 12 So. 3d 662, 665-68 (Ala. 2008) (rejecting policy interpretation that would render one provision meaningless and emphasizing that, when read in context, one provision modified another, rather than making the other provision illusory). Thus, Finger's interpretation of the policy cannot stand.

Moreover, the policies at issue in the cases Finger cites are distinguishable from his State Farm policy. For example, in *Titan Indemnity Co. v. Riley*, 641 So. 2d 766 (Ala. 1994), which Finger cites and upon which the district court relied, the Alabama Supreme Court held that an insurance policy's coverage was illusory when a provision not only covered acts "the insured did not expect or intend," but also purported to cover several intentional torts. *Id.* at 768. Here, however, the intentional tort of slander is included in coverage, and coverage is simply limited

to liability for slander when Finger did not also specifically intend to harm or injure. There is nothing illusory about these two provisions.[2]

When we read slander according to its ordinary meaning, each provision of the policy, including the two at issue here, has meaning. Finger could have been held liable for slander because he knew the statements about Weller were false, made the statements with reckless disregard to their truth or falsity, or negligently lacked knowledge as to whether the statements were true or false. And under his State Farm policy, any of these would have been covered *unless* he made the statements with specific intent to harm or injure Weller, which the exclusion unambiguously states. This means that the exclusion does not gut the policy's coverage for the intentional tort of slander. Construing the policy to give meaning to each of its provisions, as Alabama law requires, we conclude that the provisions are unambiguous and coverage is not illusory.

## IV.

For the reasons set forth above, we conclude that the policy unambiguously excepted from coverage Finger's liability for slander because he undisputably

---

[2] And Finger's expectation that he should be covered for slander when he intended to cause harm to Weller, however reasonable, does not provide a basis of coverage given the policy's unambiguous language. *Federated Mut. Ins. Co. v. Abston Petroleum, Inc.*, 967 So. 2d 705, 714-15 (Ala. 2007) (emphasizing that expectations that contradict an unambiguous provision are not, in fact, reasonable).

acted with specific intent to harm Weller. The judgment of the district court is accordingly reversed, and we remand with instructions to the district court to enter judgment in favor of State Farm.

**REVERSED and REMANDED.**