STUART, Justice.
Norfolk Southern Railway Company (“Norfolk Southern”) petitioned this Court for permission to appeal, pursuant to Rule 5, Ala. R.App. P., the circuit court’s denial of its motion to dismiss an action against it. We granted permission to appeal, and we reverse the order denying the motion to dismiss and render a judgment for Norfolk Southern.

Facts and Procedural History

James H. Goldthwaite has lived to Birmingham in the house he currently lives in for approximately 45 years. The house is adjacent to or near property on which are actively used railroad tracks owned by Norfolk Southern. The record indicates that Norfolk Southern now uses one of the railroad tracks located near Goldthwaite’s house as a staging or temporary storage area for coal trains, which consist of empty rail cars and cars loaded with coal. It further appears that while a train is temporarily being stored on the railroad tracks at least one locomotive remains running.
In October 2013, Goldthwaite filed a complaint in Jefferson Circuit Court against Norfolk Southern alleging that his “life, health, liberty and possessions” have been harmed by noise and “noxious fumes” from the diesel locomotives that are left running to coal trains that are temporarily stored near his house.
In January 2014, Norfolk Southern had the case removed to the United States District Court for the Northern District of Alabama, Southern Division, on the ground that Goldthwaite’s claims were completely preempted by the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10101 et seq. (“the ICCTA”), and that the federal district court, pursuant to 28 U.S.C. § 1331, had federal-question jurisdiction for the limited purpose of dismissing the action. In April 2014, the federal district court held that it lacked subject-matter jurisdiction over the action because Goldthwaite’s state-law claims were not completely preempted by the ICCTA. Specifically, the federal district court held that Norfolk Southern had failed to satisfy its burden of proving complete preemption because the evidence did not establish that Goldthwaite had pleaded a clear-cut federal cause of action; rather, the court held, Goldthwaite had pleaded a state-law cause of action that may be preempted by federal law. Holding that removal of the action from state court was not proper, the federal district court remanded the case to the Jefferson Circuit Court. In its order, the federal district court stated:
“On remand, Norfolk Southern is free to raise its preemption defense because £[s]tate courts are competent to determine whether state law has been preempted by federal law and they must be permitted to perform that function in cases brought before them, absent a Congressional intent to the contrary.’ Geddes [v. American Airlines, Inc.], 321 F.3d [1349], 1357 [ (11th Cir.2003) ].”
In May 2014, on remand to state court, Norfolk Southern moved the circuit court to dismiss the action, arguing, among other things, that Goldthwaite’s claims were preempted under the ICCTA because, it maintained, the nuisance action *1211 was an attempt to regulate transportation by rail carrier and actions related to the regulation and operation of rail carriers, pursuant to the ICCTA, were within the exclusive jurisdiction of the Surface Transportation Board. In support of its motion, Norfolk Southern submitted an affidavit from Justin Meko, an assistant division superintendent for Norfolk Southern, in which he averred:
“1. I am Justin A. Meko, and I am over the age of nineteen (19) years and in no way disqualified from making this affidavit, which is made from personal knowledge.
“2. I am currently employed as Assistant Division Superintendent for the Alabama Division of Norfolk Southern Corporation and its operating subsidiaries, including Norfolk Southern Railway Company (hereafter referred to simply as ‘Norfolk Southern’). Norfolk Southern is a rail carrier. Its Alabama Division is based in Irondale, Alabama, where my office is located. I have held this position since April 2013 and have worked for Norfolk Southern since 2004.
“3. I have reviewed the complaint filed by the plaintiff, Mr. Goldthwaite, in this lawsuit, and have spoken in the past to him and his wife. As I understand it, Mr. Goldthwaite is complaining about the fact that, on occasion (primarily on weekends), Norfolk Southern has to use one of the railroad tracks located near his house as a staging or temporary storage area for coal trains (containing both empty rail cars and cars loaded with coal) traveling between the coal mine at Berry, Alabama (operated by Walter Energy, Inc.) and Alabama Power Company’s coal-fired electric generating plant located near Wilsonville, Alabama (the Gaston Steam Plant, often referred to on the railroad as the ‘Yel-lowleaf plant). I understand that Mr. Goldthwaite is further complaining about the fact that, when the coal trains are temporarily left in this area, at least one locomotive of the train consist is kept running, resulting (according to Mr. Goldthwaite) in noise and fumes.
“4. As I have attempted to explain to Mr. Goldthwaite, the reason why the area of track near his house is sometimes used as a staging or temporary storage area as described above pertains directly to the rail transportation services provided by Norfolk Southern. In particular, the track capacity at the Berry coal mine and Yellowleaf steam plant facilities is such that these coal trains must on occasion (again, normally on weekends) be temporarily stored somewhere between the two facilities. The best location for that temporary storage, considering all of the rail transportation services provided by Norfolk to its various customers and the available track, is the area of track that happens to be near [Goldthwaite’s] house. Using any other location for this needed temporary storage would disrupt Norfolk Southern’s operations and the transportation services it provides to a number of customers.
“5. As I have also attempted to explain to Mr. Goldthwaite, the reason why at least one locomotive of the train consist is kept running when the coal trains are temporarily stored on the area of track near his house also pertains directly to the rail transportation services provided by Norfolk Southern. In particular, if all of the locomotives of a train consist are shut down, the air line that operates the train’s main air-brake system is shut down. If that happens (referred to as the train being ‘off air’) for more than four hours, a Class I brake inspection and test must be done by a qualified person for each locomotive and each car in the train *1212 before the train may be operated again. This is required by federal regulation, namely 49 C.F.R. § 232.205, as well as by Norfolk Southern’s Rules for Equipment Operation and Handling, specifically Rule A-6. Coal trains such as the ones which are on occasion being temporarily stored on the area of the track near Mr. Goldthwaite’s house are typically comprised of approximately one hundred (100) rail cars (hopper cars, for this kind of train) plus locomotives. To have to do a Class I brake test for each of the cars and locomotives on each of the trains stored in this area would require considerable resources and would adversely affect Norfolk Southern’s ability to provide rail transportation services to its customers. Indeed, Norfolk Southern’s Rules for Equipment Operation and Handling, specifically Rule L-2389(k) require that the lead locomotive of the trains which are temporarily stored must remain running. Furthermore, in addition to the efficiencies saved by this practice, there is also a direct safety benefit in that, if all locomotives of the train are shut down, the train’s air brake system would not be operable while the train is stored. By leaving the lead locomotive running, the train’s air brake system can be engaged while the train is stored.”
After conducting a hearing, the circuit court entered an ’order denying Norfolk Southern’s- motion to dismiss. Subsequently, the circuit court amended the order to -certify that Norfolk Southern’s motion to dismiss involved controlling questions of law and that an appeal would materially advance the ultimate termination of the litigation.
On August 29, 2014, Norfolk Southern petitioned this Court for a permissive appeal, pursuant to Rule 5, Ala. R.App. P. On October 27, 2014, this Court granted the petition for a permissive appeal to address whether Goldthwaite’s nuisance claims are preempted by the ICCTA.

Standard of Review

“This Court reviews de novo a trial court’s conclusions of law. See State Farm Mut. Auto. Ins. Co. v. Harris, 882 So.2d 849, 852 (Ala.2003).
“‘The appropriate standard of review of a trial court’s denial of a motion to dismiss is whether “when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle [the pleader] to relief.” Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993); Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala.1985). This Court does not consider whether the plaintiff will ultimately prevail, but only whether the plaintiff may possibly prevail. Nance, 622 So.2d at 299. A “dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.” Nance, 622 So.2d at 299; Garrett v. Hadden, 495 So.2d 616, 617 (Ala.1986); Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala.1986).’
“Lyons v. River Road Constr., Inc., 858 So.2d 257, 260 (Ala.2003).”
BT Sec. Corp. v. W.R. Huff Asset Mgmt. Co., 891 So.2d 310, 312-13 (Ala.2004).

Discussion

Norfolk Southern contends that the circuit court erred in denying its motion to dismiss because, it says, Goldthwaite’s nuisance claims are expressly preempted by the ICCTA. ..
This Court has not had occasion to address a case dealing specifically with the preemption of nuisance claims by the *1213 ICCTA. A state-law action is preempted under the Supremacy Clause of the federal Constitution[1] if the intent of Congress to preempt state law is clear and explicit in the statute. English v. General Elec. Co., 496 U.S. 72, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). To determine whether Goldth-waite’s nuisance claims are expressly preempted by the ICCTA, this Court must determine whether Congress specifically stated in the ICCTA that regulation of railroad operations and side tracks is reserved to the federal government. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 95, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). “If the statute contains an express preemption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress’ preemptive intent,” CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993).
The ICCTA, effective January 1, 1996, abolished the Interstate Commerce Commission and created the Surface Transportation Board. 49 U.S.C. § 10101 et seq. Section 10501(b) provides:
“(b) The jurisdiction of the [Surface Transportation] Board over—
“(1) transportation by rail earners, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
“(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities even if the tracks are located or intended to be located, entirely in one State,
“is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under federal or State law.”
49 U.S.C. § 10102(9)(A) and (B) define “transportation” as used in § 10501(b)(1) to include:
“(A) a locomotive, car,' vehicle, vessel, warehouse, wharf, , pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to' the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use; and
“(B) services related to that movement, including receipt, delivery, elevation, transfer in transit,' refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property....”
The definition of transportation as used in the ICCTA is expansive; the language identifying the Surface Transportation Board’s exclusive jurisdiction over transportation by rail carriers is unambiguous and precise. .Congress specifically provided that the Surface Transportation Board has exclusive jurisdiction over railroad operations and unequivocally preempted remedies otherwise provided by federal or state law. Cf. Pace v. CSX Transp., Inc., 613 F.3d 1066 (11th Cir.2010)(holding that the ICCTA preempted state-law nuisance claim with respect to operation of side track); Friberg v. Kansas City S. Ry., 267 F.3d 439, 444 (5th Cir.2001)(holding that the ICCTA preempted claims of negligence and negligence per se with respect to railroad’s alleged road blockages); Pejepscot Indus. Park, Inc. v. Maine Cent. R.R., 297 F.Supp.2d 326, 334 (D.Maine 2003)(holding that the ICCTA preempted state-law tortious-interference claim); *1214 Guckenberg v. Wisconsin Cent. Ltd., 178 F.Supp.2d 954, 958 (E.D.Wis.2001)(holding that the ICCTA preempted state-law nuisance claim with regard to railway traffic); Rushing v. Kansas City S. Ry., 194 F.Supp.2d 493, 500-01 (S.D.Miss.2001)(holding that the ICCTA preempted state-law negligence and nuisance claims intended to interfere with railroad’s operation of switchyard); and South Dakota R.R. Auth. v. Burlington N. & Santa Fe Ry., 280 F.Supp.2d 919, 934-35 (D.S.D.2003)(holding that the ICCTA preempted state-law claims alleging tor-tious interference and seeking punitive damages).
Here, Goldthwaite seeks damages for the nuisance he alleges is created by Norfolk Southern’s use of the railroad tracks near his house as a storage area. The preemptive power, pursuant to the ICC-TA, over rail transportation includes regulatory power over movement of property by rail and storage of property. Goldth-waite’s action seeks to use Alabama nuisance law to regulate Norfolk Southern’s operation of the railroad tracks, i.e., for the movement of property and its storage. Congress expressly provided that such matters, however, are within the exclusive jurisdiction of the Surface Transportation Board. Therefore, in this case, only the Surface Transportation Board has jurisdiction to hear Goldthwaite’s claim, and the ICCTA preempts state law.

Conclusion

Because .Goldthwaite’s claims are preempted by the ICCTA, the circuit court erred in denying Norfolk Southern’s motion to dismiss. Therefore, we reverse the circuit court’s order denying Norfolk Southern’s motion to dismiss and render a judgment for Norfolk Southern, dismissing Goldthwaite’s state-court action.
REVERSED AND JUDGMENT RENDERED.
MOORE, C.J., and BOLIN, PARKER, and SHAW, JJ., concur.
WISE, J., recuses herself.

. See U.S. Const. art. VI, cl. 2.