THOMAS, Judge.
B.B. (“the mother”) appeals from a judgment of the Tuscaloosa Circuit Court (“the trial court”) awarding custody of Br.B. (“the child”) to the child’s maternal grandmother, L.W. (“the grandmother”).
The record indicates that the child was born in Michigan on July 25, 2002. Soon after the child’s birth, the grandmother, with the mother’s consent, was granted legal guardianship of the child by the Washtenaw County, Michigan, Probate Court (“the Michigan court”).[1] Shortly thereafter, the grandmother moved with the child to Tuscaloosa, Alabama. The child lived with the grandmother in Ala-bama until April 2007, at which time the child went to live with the mother in Michigan. The record indicates that the mother continued to allow the child to visit with the grandmother in Alabama. This action stems from one such visit. According to the record, the mother allowed the child and one the mother’s other children (“the younger brother”) to visit the grandmother in June 2011; the children were scheduled to return to Michigan in August 2011 before the school year began. However, although the grandmother allowed the younger brother to return to Michigan, the grandmother detained the child in Ala-bama. According to the grandmother, she detained the child in Alabama because, she said, she had observed bruises and broken skin on the child’s legs and an infection in the child’s ears.
On July 5, 2012, the mother filed an emergency petition in the trial court seeking a writ of assistance and delivery of the child to her. The mother also filed in the Tuscaloosa Probate Court (“the probate court”) a withdrawal of parental guardianship in which she withdrew her consent to the legal guardianship of the grandmother over the child, and, additionally, she filed in the probate court a certificate of appointment of guardian in which she appointed L.B., the child’s maternal grandfather (“the grandfather”), as guardian of the child.[2] The record also contains a letter from the Michigan court to the grandmother dated July 5, 2006, informing the grandmother that the guardianship granted to her by that court was valid only as long as she was a resident of Michigan and instructing her to establish guardianship in her current state of residency. The record additionally contained a letter from the Michigan court to the mother dated August 29, 2006, informing the mother that the guardianship granted to the grandmother by that court had been terminated. The grandmother claimed that she was not aware of either letter until 2012, although the July 5, 2006, letter was mailed to her correct address.[3]
The grandmother filed an answer to the mother’s emergency petition and a counterclaim in the trial court on August 3, 2012, in which she alleged that the mother had physically abused the child and that it was in the child’s best interest for custody to be awarded to the grandmother. Subsequently, each party filed a memorandum addressing whether, pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (“the UCCJEA”), codified *1045 at § 30-3B-101 et seq., AJa.Code 1975, jurisdiction was proper in Alabama; the mother argued that jurisdiction was proper in Michigan.
A hearing was held on April 4, 2013, solely on the issue of jurisdiction. The trial court entered an order on April 11, 2013, in which it stated that “Alabama does appear to the ‘home state’ of the minor child under the UCCJEA as the minor child resided in the State of Ala-bama for at least six consecutive months immediately before the commencement of the this child custody proceeding with a person acting as a parent.” The trial court also indicated that it had contacted the Michigan court and that that court had indicated that it would exercise jurisdiction only if an Alabama court declined to do so. The mother filed a motion seeking visitation with child on May 30, 2013; the trial court granted supervised visitation by an order dated June 27, 2013.
A trial was held over three days on July 29, August 2, and September 24, 2013, at which the trial court heard evidence ore tenus. The trial court entered a final judgment on November 4, 2013. In its judgment, the trial court held that the mother had relinquished custody of the child, and it awarded the grandmother custody of the child. The judgment also awarded the mother supervised visitation and ordered her to pay child support. The mother filed a motion to alter, amend, or vacate the judgment on November 26, 2013, in which she continued to assert that the trial court lacked jurisdiction pursuant to the UCCJEA and that, because the grandmother’s counterclaim amounted to allegations of dependency, the trial court lacked subject-matter jurisdiction over the counterclaim. The grandmother responded on January 7, 2014. After a hearing on January 16, 2014, the trial court entered an amended final judgment on February 4; 2014, in which it added a statement explaining that it had conferred with the Michigan court before determining that it had jurisdiction to hear this case. The mother appealed to this court on February 18, 2014.
In her brief on appeal, the mother argues that the trial court lacked jurisdiction over this case pursuant to the UCCJEA; that the trial court lacked jurisdiction over the grandmother’s counterclaim that, she argues, .asserted that the child was dependent; that the trial court’s judgment was not supported by clear and convincing evidence; and that the trial court unnecessarily restricted the mother to supervised visitation.
We first address whether the trial court had jurisdiction over this matter pursuant to the UCCJEA.
“ ‘ “[Sjubject-matter jurisdiction may not be waived; a court’s lack of subject-matter jurisdiction may be raised at any time by any party and may even be raised by a court ex mero motu.” ’ S.B.U. v. D.G.B., 913 So.2d 452, 455 (Ala.Civ.App.2005) (quoting C.J.L. v. M.W.B., 868 So.2d 451, 453 (Ala.Civ.App.2003)). Questions of law, such as whether a court has subject-matter jurisdiction, are reviewed de novo. BT Sec. Corp. v. W.R. Huff Asset Mgmt. Co., 891 So.2d 310 (Ala.2004).”
K.R. v. Lauderdale Cnty. Dep’t of Human Res., 133 So.3d 396, 403-04 (Ala.Civ.App.2013).
“ ‘[T]he [UCCJEA], codified at Ala. Code 1975, § 30-3B-101 et seq., controls decisions regarding whether a court of this state has jurisdiction to make a child-custody determination or to modify another state’s child-custody determination. M.J.P. v. K.H., 923 So.2d 1114, 1116-17 (Ala.Civ.App.2005). A “child-custody determination,” as defined in the UCCJEA, in- *1046 eludes any judgment providing for the legal or physical custody of a child or providing visitation with a child. § 30-3B-102(3). A “child-custody proceeding” is defined in the UC-CJEA to include not only divorce actions involving the custody of a child, but also “neglect, ... dependency, ... [and] termination of parental rights” actions in which the issue of child custody is addressed. § 30-3B-102(4).’
“R.W.[ v. G.W.], 2 So.3d [869,] 871 [(Ala.Civ.App.2008) ].”
J.D. v. Lauderdale Cnty. Dep’t of Human Res., 121 So.3d 381, 384 (Ala.Civ.App.2013).
Section 30-3B-201, Ala.Code 1975, sets forth when an Alabama court has jurisdiction to make an initial custody determination:
“(a) Except as otherwise provided in Section 30-3B-04, a court of this state has jurisdiction to make an initial child custody determination only if:
“(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
“(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 30-3B-207 or 30-3B-208, and:
“a. The child and the child’s parents, or the child and at least one parent or a person acting as a parent, have a significant connection
with this state other than mere physical presence; and
“b. Substantial evidence is available in this state concerning the child’s care, protection, training, and personal relationships;
“(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or 30-3B-208; or
“(4) No court of any other state' would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).
“(b) Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this state.
“(c) Physical presence of a child is not necessary or sufficient to make a child custody determination.”
The UCCJEA defines “home state” in § 30-3B-102(7), Ala.Code 1975, which reads, in its entirety:
“The state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of the child or any of the mentioned persons is part of the period.”
An Alabama circuit or juvenile court may not make any custody determination — neither an initial custody determination nor a .determination as to modification of custody — regarding a child unless that court has jurisdiction to make an initial custody determination under the UCCJEA, which *1047 jurisdiction typically turns on whether Ala-bama is the home state of the child.
Section 30-3B-102(13), Ala.Code 1975, provides that a “person acting as a parent” is:
“A person, other than a parent, who:
“a.. Has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding; and
“b. Has been aivarded legal custody by a court or claims a right to legal custody under the law of this state.”
(Emphasis added.)
It is undisputed that the child had returned to Michigan to live with the mother in April 2007. It is further undisputed that the child had come to Alabama in June 2011 with the mother’s permission to visit the grandmother with the intention of returning to Michigan in August 2011. The grandmother maintains' that the child had been in her physical custody for more than six months before the commencement of the proceedings and that during that time she had acted as a parent for the child. Therefore, according to the grandmother, Alabama is the child’s home state.
This court has previously held that a grandparent may satisfy the requirements set forth in § 30-3B-102(13) regarding a person acting as a parent. See Patrick v. Williams, 952 So.2d 1131 (Ala.Civ.App.2006). In Patrick, the parents of the children at issue in that case were divorced by the Tallapoosa Circuit Court in 2000. 952 So.2d at 1133. That court, by awarding the mother custody of the children, exercised jurisdiction over the initial custody determination. Id. The mother subsequently moved to Texas; however, in 2004, the mother voluntarily placed the children with their grandmother, who still lived in Alabama. Id. Shortly thereafter, the grandmother .filed a petition for emergency custody in the Tallapoosa Circuit Court. Id. The father, who also lived in Alabama, responded to the grandmother’s petition for custody; the father and grandmother entered into an agreement giving the grandmother pendente lite custody and the father visitation. Id. at 1134. The Talla-poosa Circuit Court ultimately awarded the grandmother custody of the children. Id.
In affirming the Tallapoosa Circuit Court’s judgment awarding permanent custody of the children to the grandmother, this court closely examined whether that court had maintained jurisdiction pursuant to the UCCJEA. 952 So.2d at 1138-39. This court held that the Tallapoosa Circuit Court continued to have jurisdiction to modify custody pursuant to § 30-3B-202, Ala.Code 1975, because the grandmother had physical custody when she initiated the custody proceedings and because the grandmother had claimed a legal right to their custody. Id: at 1139. Additionally, the children, the grandmother, and the father all lived in Alabama at the time the custody proceeding was commenced. Id. at 1139-40.'
However, in Patrick, the children had been placed with the grandmother with the mother’s permission. Conversely, in the present case, the mother had allowed the child only to visit the grandmother; the mother did not give the grandmother permission to assume physical custody of the child and even pointed out to the grandmother that any legal claim she had to the child had expired in 2006. It does not appear from our research that either the legislature or the judiciary of this state has specifically addressed what is sufficient to “claim[ ] a right to legal custody under the *1048 law of this state.” § 30-3B-102(13)b. Howevei-, a review of the decisions of other jurisdictions reveals that often a grandparent who is claiming a right to legal custody first came to have physical custody through at least a tacit agreement with the custodial parent. See, e.g., Mark L. v. Jennifer S., 133 Misc.2d 454, 506 N.Y.S.2d 1020. (Fam.Ct.1986)(grandparents were granted legal guardianship with the written consent of both parents); In re Custody of Bozarth, 182 Ill.App.3d 345, 538 N.E.2d 785, 131 Ill.Dec. 410 (1989)(mother abandoned the child and the father had voluntarily permitted the grandmother to have physical custody); and Harper v. Landers, 180 Ga.App. 154, 348 S.E.2d 698 (1986)(grandmother acted as a parent when the mother and children lived with her before the mother’s death and grandmother continued to care for the children after the mother’s death).
The grandmother testified that she was unaware that the legal guardianship had been terminated in 2006, and, she further testified, she believed that she still possessed the authority to determine that the child would remain in Alabama. However, she admitted that, in 2012, the mother had personally shown her the letter from the Michigan court revoking the guardianship and that she had still refused to return the child to the mother.
The grandmother, in reliance on § 30-3B-102(13), asserts that, because the child had been in her physical custody for more than six months at the time the mother filed the petition for a writ of assistance in the trial court, Alabama is the proper jurisdiction in which to determine custody of the child. However, our analysis of the UCCJEA does not simply rest upon the child’s residency over the six months preceding the initiation of these proceedings. To be sure, we do not take lightly the allegations that the child had been abused. However, we cannot condone the unilateral decision of a grandparent, or of any party, to deprive a parent of the fundamental right to custody of his or her child with no legal justification. The grandmother did not invoke the temporary emergency jurisdiction of the trial court pursuant to § 30-3B-204(a), Ala.Code 1975, nor did she file a petition asserting that the child was dependent when she first discovered the alleged abuse.
We are further unpersuaded by the grandmother’s argument that § 30-3B-102(13) does not require that the ‘“claim to legal custody’ to be good or bad,” or, in other words, that a person acting as a parent need not have a colorable claim, to custody. Citing Smith v. Smith, 922 So.2d 94, 99 (Ala.2005), the grandmother asserts that she was standing “in loco parentis.” Our supreme court decided in Smith that the trial court had erroneously accorded individuals that, although family members, were essentially acting as babysitters in loco parentis status. Id. at 100. The underlying issues in Smith were various tort claims relating to the accidental death of a child; our supreme court did not address whether someone acting in loco parentis satisfied the requirements of the UC-CJEA. Id. at 96-100. We agree with the North Dakota Supreme Court that, “[a]b-sent a requirement of mandating a color-able claim [to custody], the underlying policies of the UCCJEA and the [Parental Kidnapping Prevention Act] would be frustrated as nonparents execute ‘interstate abductions and other unilateral removals of children [ ] to obtain custody and visitation awards.’ Rogers [v. Platt], [199 Cal.App.3d 1204,] 1212-13, 245 Cal.Rptr. 532 [(1988)].” Schirado v. Foote, 785 N.W.2d 235, 244 (N.D.2010). Based upon the foregoing, we conclude that the grandmother did not have a legal claim to custody under the laws of this state; therefore, she was *1049 precluded from “acting as a parent” as defined by § 30-3B-102(13). Therefore, we must conclude that Alabama is not the child’s home state and that the trial court could not have assumed jurisdiction over this matter pursuant to § 30-B-201 (a)(1).
We likewise determine that the trial court was precluded from assuming jurisdiction pursuant to § 30-3B-201(a)(2). The record indicates that, at the April 4, 2013, hearing on jurisdiction, the trial court acknowledged that a hearing had recently been held in Michigan and that it would contact the Michigan court. In its April 11, 2013, order, the trial court stated that it had had a telephone conference with the Michigan court on April 9, 2013, and that that court had indicated that it would not be exercising jurisdiction over this matter. However, although § 30-3B-201(a)(2)a. provides for jurisdiction in this state when a court of the child’s home state declines to exercise jurisdiction, such jurisdiction is based upon the child and a person acting as a parent having a significant connection with this state. We have already determined that the grandmother was not a person acting as a parent.
Section 30-3B-201(a)(3) provides that a court of this state may assume jurisdiction when “[a]ll courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or 30-3B-208”; that subsection does not require that a person acting as a parent live in this state or have significant connection with this state. We recognize that the trial court indicated that it had communicated with the Michigan court, and our reading of the record indicates that Michigan is the only other state that could qualify as the child’s home state as defined by the UC-CJEA. However, we further note that § 30-3B-110, Ala.Code 1975, provides, in its entirety:
“(a) A court of this state may communicate with a court in another state concerning a proceeding arising under this chapter.
“(b) The court may allow the parties to participate in the communication. If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.
“(c) Communication between courts on schedules, calendars, court records, and similar matters may occur without informing the parties. A record need not be made of the communication.
“(d) Except as otherwise provided in subsection (c), a record must be made of a communication under this section. The parties must be informed promptly of the communication and granted access to the record.
“(e) For the purposes of this section, ‘record’ means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form.”
(Emphasis added.) The record on appeal does not contain a record of the communications between the trial court and the Michigan court as required by § 30-3B-110.
Although the grandmother’s counterclaim for custody did not specifically invoke the trial court’s emergency jurisdiction, she did, in fact, allege that the child had been physically abused. Section 30-3B-204, Ala.Code 1975, provides in its entirety:
“(a) A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an *1050 emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.
“(b) If there is no previous child custody determination that is entitled to be enforced under this chapter and a child custody proceeding has not been commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.
“(c) If there is a previous child custody determination that is entitled to be enforced under this chapter, or a child custody proceeding has been commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under Sections 30-3B-201 through 30-3B-203. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.
“(d) A court of this state which has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, shall immediately communicate with the other court. A court of this state which is exercising jurisdiction pursuant to Sections 30-3B-201 through 30-3B-203, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.”
However, temporary emergency jurisdiction did not authorize the trial court to make an award of permanent custody. As noted in the Official Comment to § 30-3B-204, “a custody determination made under the emergency jurisdiction provisions of this section is a temporary order. The purpose of the order is to protect the child until the state that has jurisdiction under Sections [30-3B-201, 30-3B-202, and 30-3B-203J enters an order.” Until it is determined that an Alabama court may properly exercise jurisdiction over this matter, no court of this state has jurisdiction to award permanent custody of the child.
At this time, we express no opinion regarding the appropriate court to exercise jurisdiction over this matter.[4] However, *1051 because the trial court failed to • comply with § 30-3B-110, we reverse the judgment of the trial court insofar as it awarded permanent custody of the child to the grandmother, and we remand this cause for the trial court to comply with § 30-3B-110. Insofar as the trial court exercised it temporary emergency jurisdiction, we remand this case to the trial court with the instruction to comply with the procedures set out in § 30-3B-204(b).
Out of an abundance of caution, we next address the mother’s argument that the grandmother’s counterclaim seeking custody was actually a dependency petition, which, the mother contends, prevented the trial court from asserting subject-matter jurisdiction over the grandmother’s counterclaim. The mother is correct that a juvenile court “exereise[s] exclusive original jurisdiction of juvenile court proceedings in which a child is alleged ... to be dependent, or to be in need of supervision.” See § 12-15-114(a), Ala.Code 1975. However, the grandmother did not allege that the child was dependent. In response to the mother’s petition seeking a writ of assistance that, in effect, requested the trial court to return custody of the child to her, the grandmother filed a counterclaim for custody of the child and stated reasons that such an award would be in the child’s best interests. “ ‘Where the contest is between the parents, or between a parent and a third person, as to who should have the control and care of the minor, the court exercising general civil jurisdiction is the proper and exclusive tribunal to decide the issue.’ ” Ex parte K.L.P., 868 So.2d 454, 456 (Ala.Civ.App.2003)(quoting 47 Am.Jur.2d Juvenile Courts § 4 (1995)).
The mother cites Ex parte L.E.O., 61 So.3d 1042 (Ala.2010) for, she asserts, the proposition that a grandparent must bring a claim for custody of a grandchild as a dependency petition in the juvenile court. However, the petitioners in L.E.O. initiated that action by filing a petition in the juvenile. court alleging that the child in their care was dependent and seeking custody of that child. 61 So.3d at 1043. Our supreme court held that the child had been abandoned by everyone legally required to care for the child; therefore, our supreme court concluded, the child must be found to be dependent. Id. at 1050.
In Hensley v. Kanizai, 143 So.3d 186, 188 n. 1 (Ala.Civ.App.2013), this court noted that, although circuit courts have no jurisdiction to consider a dependency petition, the maternal grandparents in that case could have intervened in the divorce action between the parents and sought custody based on allegations that the parents were unfit to have custody of the children. See Ex parte Terry, 494 So.2d 628 (Ala.1986).[5] This court went on to note that factual allegations that the grandparents asserted in them motion to intervene, if proven, would be sufficient to *1052 establish unfitness and, thus, overcome the parents’ prima facie right to custody of the children. As noted in the present case, the grandmother did not file a petition alleging that the child was dependent; she filed a counterclaim for custody in response to the mother’s petition. Based upon the foregoing, we conclude that the grandmother properly filed her counterclaim for custody in the trial court.
Because we are reversing the judgment of the trial court insofar as it awarded permanent custody of the child to grandmother and failed to limit its custody award to the scope permitted by § 30-3B-204, we pretermit analysis of the mother’s remaining arguments at this time.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., concurs.
PITTMAN, J., concurs in the result, without writing.
MOORE, J., dissents, with writing.
DONALDSON, J., recuses himself.

. The record indicates that the father of the child is deceased.

. The grandfather, although divorced from the -grandmother, also lived in Alabama. The mother later revoked the guardianship that she had granted the grandfather.

.The mother testified that she had been informed by the probate court that the grandmother had been granted legal guardianship over the child in Alabama. The record is devoid of any evidence indicating that the grandmother had been awarded legal guardianship or custody of the child by any court of ⅜ Alabama.

. Although we do note that, even if we were able to conclude that the grandmother was a person acting as a parent, courts of this state are instructed by § 30-3B-208(a), Ala.Code 1975, to decline jurisdiction whenever a party has engaged in "unjustifiable conduct,” such as situations in which a child has been brought to this state without the permission of the parents. See S.C. v. J.T.C., 47 So.3d 1253, 1256 n. 3 (Ala.Civ.App.2010).

. In Ex parte Terry, our supreme court set forth the following standard to be applied in custody disputes between a parent and a non-parent:
" ‘The prima facie right of a natural parent to the custody of his or her child, as against the right of custody in a nonparent, is grounded in the common law concept that the primary parental right of custody is in the best interest and welfare of the child as a matter of law. So strong is this presumption, absent a showing of voluntary forfeiture of that right, that it can be overcome only by a finding, supported by competent evidence, that the parent seeking custody is guilty of such misconduct or neglect to a degree which renders that parent an unfit and improper person to be entrusted with the care and upbringing of the child in question. Hanlon v. Mooney, 407 So.2d 559 (Ala.1981).’ [Ex parte Mathews,] 428 So.2d [58,] 59 [(Ala 1983)].”
494 So.2d at 632.