Rel: May 24, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2023-2024

_____

### CL-2023-0506

_____

### Ex parte R.B. and A.L.

### PETITION FOR WRIT OF MANDAMUS

### (In re: R.B., Jr.)

### (Conecuh Juvenile Court:  JU-22-10.02)

_____

### CL-2023-0507

_____

### Ex parte R.B. and A.L.

### PETITION FOR WRIT OF MANDAMUS

### (In re: A.B.)

### (Conecuh Juvenile Court:  JU-22-11.02)

_____

**CL-2023-0508**

_____

**Ex parte R.B. and A.L.**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: B.B.)**

**(Conecuh Juvenile Court:  JU-22-12.02)**

PER CURIAM.

R.B. ("the father") and A.L. ("the mother") petition this court for writs of mandamus directing the Conecuh Juvenile Court ("the juvenile court") to stay cases pending in the juvenile court involving their three children, R.B., Jr.; A.B.; and B.B. ("the children"), or, in the alternative, to dismiss the underlying actions based upon lack of personal jurisdiction.

<u>Background</u>

On May 11, 2022, the Conecuh County Department of Human Resources ("DHR") filed dependency petitions as to the children in the juvenile court, alleging that the father and the mother had exposed the children to domestic violence in an incident with a neighbor.  The ensuing three actions were assigned case numbers of JU-22-10.01, JU-22-11.01,

and JU-22-12.01, respectively. According to the dependency petitions, the children had been residing in Alabama for approximately six weeks. The children were placed in foster care.

On February 22, 2023, the mother filed motions for return of custody, arguing that DHR had been operating under a protective-supervision order/shelter-care order and had not requested an adjudicatory or permanency hearing. The mother averred that she had moved to Georgia and was no longer in a relationship with the father.

On May 4, 2023, the juvenile court, following a hearing, entered in each action an order finding that the children were no longer dependent as to the mother and purporting to return custody to the mother. On May 22, 2023, the children's former foster mother (who had had physical custody of the oldest child from May 2022 to May 2023; physical custody of the middle child from September 2022 to May 2023; and physical custody of the youngest child from January 2023 to May 2023) filed motions to intervene in JU-22-10.01, JU-22-11.01 and JU-22-12.01. The juvenile court denied the motions as moot because, it said, no case was then pending in juvenile court. DHR appealed from the orders returning

custody, but, in August 2023, it filed a motion to voluntarily dismiss the appeals, which this court granted.

On May 22, 2023, the former foster mother commenced actions for custody in the juvenile court; those actions were assigned the case numbers of JU-22-10.02, JU-22-11.02, and JU-22-12.02, respectively. The former foster mother alleged that "new and current facts" supported adjudications of dependency as to the mother and the father. It appears, based on the allegations in the underlying petitions, that the father is now living in Georgia.

On June 29, 2023, the mother filed answers to the former foster mother's petitions and argued that the juvenile court lacked personal jurisdiction. The mother also asked the juvenile court to stay the proceedings in JU-22.10.02; JU-22-11.02; and JU-22-12.02 because, at that time, DHR's appeals in JU-22-10.01, JU-22-11.01, and JU-22-12:01 were still pending and involved the same children and parents. On June 30, 2023, the father filed answers and moved to dismiss the former foster mother's petitions for lack of jurisdiction because, he said, the juvenile court had found that the children were no longer dependent and because

4

they were living in Georgia with the mother. On July 7, 2023, the juvenile court denied the motions to dismiss.

On July 20, 2023, the mother and the father filed joint petitions for a writ of mandamus seeking (1) orders staying the custody actions -- JU-22-10.02, JU-22-11.02, and JU-22-12.02 -- until the appeals in JU-22-10.01, JU-22-11.01, and JU-22-12.01 were resolved; and (2) orders dismissing the former foster mother's petitions in JU-22-10.02, JU-22-11.02, and JU-22-12.02 for lack of personal jurisdiction because, they contend, the mother and the children reside in Georgia.

The aspect of the parents' mandamus petitions seeking review of the juvenile court's orders denying their motions to stay the custody actions -- JU-22-10.02, JU-22-11.02, and JU-22-12.02 -- until the appeals in JU-22-10.01, JU-22-11.01, and JU-22-12.01 were resolved is now moot because DHR has voluntarily dismissed its appeals in JU-22-10.01, JU-22-11.01, and JU-22-12.01. Mandamus will not issue in a case where the underlying issue has become moot. Ex parte T.R.S., 794 So. 2d 1157, 1159 (Ala. Civ. App. 2001). Additionally, DHR was the party seeking dependency adjudications in JU-22-10.01, JU-22-11.01, and JU-22-12.01, making inapplicable the parents' argument in their mandamus petitions

that § 6-5-440, Ala. Code 1975, prohibits simultaneous actions on the same cause of action against the same party. Also, the former foster mother alleged "new and current facts" in her dependency petitions, which arguably would have avoided any preclusive effect under that statute.

This court asked the parties to address whether the juvenile court has subject-matter jurisdiction pursuant to § 30-3B-202, Ala. Code 1975, including arguments regarding who might meet the definition of a "person acting as a parent" under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), § 30-3B-101 et seq., Ala. Code 1975.[1]

<u>Standard of Review</u>

Our standard of review is well-established:

> "'"The writ of mandamus is an extraordinary
> remedy; it will not be issued unless the petitioner
> shows '"'(1) a clear legal right in the petitioner to
> the order sought; (2) an imperative duty upon the
> respondent to perform, accompanied by a refusal
> to do so; (3) the lack of another adequate remedy;

---

[1]Subject-matter jurisdiction is a matter of such magnitude that we take notice of it at any time and can do so <u>ex mero motu</u>. <u>M.L.W. v. J.W.</u>, [Ms. CL-2022-0640, May 12, 2023] ___ So. 3d ___. ___ (Ala. Civ. App. 2023).

> > and (4) properly invoked jurisdiction of the court.'"' Ex parte Inverness Constr. Co., 775 So. 2d 153, 156 (Ala. 2000) (quoting Ex parte Gates, 675 So. 2d 371, 374 (Ala.1996)); Ex parte Pfizer, Inc., 746 So. 2d 960, 962 (Ala. 1999)."'

> "Ex parte Vest, 68 So. 3d 881, 884 (Ala. Civ. App. 2011) (quoting Ex parte Children's Hosp. of Alabama, 931 So. 2d 1, 5-6 (Ala. 2005))."

Ex parte M.A.G., 160 So. 3d 22, 24 (Ala. Civ. App. 2014).

The issue of subject-matter jurisdiction is reviewable by way of a petition for a writ of mandamus. Ex parte C.G., [Ms. CL-2023-0757, Jan. 12, 2024] ___ So. 3d ___, ___ (Ala. Civ. App. 2024). A timely petition for the writ of mandamus is also a proper method for presenting a challenge to the denial of a party's motion to dismiss for lack of personal jurisdiction. Ex parte Sperry, 377 So. 3d 560, 562 (Ala. Civ. App. 2022).

Discussion

One of the purposes of the UCCJEA is to facilitate cooperation between courts in different states in issuing custody and visitation orders. Ex parte Siderius, 144 So. 3d 319 (Ala. 2013).

> "'The UCCJEA is a jurisdictional act that establishes subject-matter jurisdiction over child-custody proceedings.' H.T. v. Cleburne Cty. Dep't of Human Res., 163 So. 3d 1054, 1062 (Ala. Civ. App. 2014). The UCCJEA differentiates between a court's jurisdiction to make an 'initial child custody determination' and a court's 'continuing, exclusive

7

jurisdiction' over a child-custody determination. See §§ 30-3B-201 and -202, Ala. Code 1975. A 'child custody proceeding' is '[a] proceeding in a court in which legal custody, physical custody, or visitation with respect to a child is an issue' and includes proceedings alleging dependency and seeking termination of parental rights. § 30-3B-102(4), Ala. Code 1975. A 'child custody determination' is defined as '[a] judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order.' § 30-3B-102(3). An 'initial determination' is defined as '[t]he first child custody determination concerning a particular child.' § 30-3B-102(8)."

A.M. v. Houston Cnty. Dep't of Hum. Res., 262 So. 3d 1210, 1216 (Ala. Civ. App. 2017).

The UCCJEA recognizes four categories of subject-matter jurisdiction: (1) initial child-custody jurisdiction, see § 30-3B-201, Ala. Code 1975; (2) continuing, exclusive jurisdiction over a child-custody determination, see § 30-3B-202, Ala. Code 1975; (3) jurisdiction to modify another state's child-custody determination, see § 30-3B-203, Ala. Code 1975; and (4) temporary emergency jurisdiction to protect a child present in this state, see § 30-3B-204, Ala. Code 1975.

In the present case, the juvenile court made initial child-custody determinations, pursuant to its temporary emergency jurisdiction under § 30-3B-204(a), Ala. Code 1975, when it awarded DHR legal custody of

8

the children on May 12, 2022, to resolve an emergency regarding the children's safety and welfare. The juvenile court purported to enter another set of "permanent" custody orders on May 4, 2023, when it found the children not to be dependent and awarded their custody to the mother; however, the part of the order disposing of their custody was void. See K.C.G. v. S.J.R., 46 So. 3d 499, 502 (Ala. Civ. App. 2010) ("[I]f, and only if, a juvenile court finds that the child is dependent, the court may then conduct proceedings to determine the custodial disposition of the child.", see also J.A. v. C.M., 93 So. 3d 953, 955 (Ala. Civ. App. 2012) (stating that juvenile court, after finding that allegedly dependent children are not dependent, must dismiss a dependency action and allow custody to be returned to former custodians). As a result, the juvenile court never entered child-custody determinations pursuant to any authority other than temporary emergency jurisdiction under § 30-3B-204(a).

Section 30-3B-202(a) provides that a court of this state maintains continuing, exclusive jurisdiction over a child-custody determination if the determination was made "consistent with [Ala. Code 1975, §] 30-3B-201 or [§] 30-3B-203." In this case, the juvenile court did not make child-

custody determinations consistent with either § 30-3B-201 or § 30-3B-203; instead, it relied only on § 30-3B-204(a). Thus, the juvenile court did not have continuing, exclusive jurisdiction pursuant to §30-3B-201(a).

Section 30-3B-202(b) provides that "[a] court of this state which has made a child custody determination and does not have continuing, exclusive jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under [§] 30-3B-201." Thus, the juvenile court in this case would have had jurisdiction to enter a subsequent child-custody determination only if it had jurisdiction under § 30-3B-201, which sets forth four separate bases for jurisdiction: home-state jurisdiction pursuant to § 30-3B-201(a)(1); significant-connection jurisdiction pursuant to § 30-3B-201(a)(2); more-appropriate-forum jurisdiction (in which jurisdiction has been declined by all courts having jurisdiction under subdivision (a)(1) and (a)(2)), pursuant § 30-3B-201(a)(3); and last-resort-jurisdiction (in which no court of any other state would have jurisdiction under subdivision (a)(1), (a)(2), or (a)(3)), pursuant § 30-3B-201(a)(4).

Section 30-3B-201(a)(1), which governs home-state jurisdiction, provides:

"(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state; ...."

Under § 30-3B-201(a)(1), the juvenile court may exercise jurisdiction over the former foster mother's three new dependency actions as to the children if Alabama was the home state of the children on the date of the commencement of the proceedings, i.e., May 22, 2023, the date on which the former foster mother filed her verified petitions for custody. The "home state" is "[t]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." § 30-3B-102(7), Ala. Code 1975. Alabama was not the children's home state because the children moved to Georgia on May 5, 2023. However, § 30-3B-201(a)(1) further provides that an Alabama court may nonetheless exercise home-state jurisdiction if Alabama was "the home state of the child[ren] within six months before the commencement of the proceeding and [they are] absent from this state but a parent or person acting as a parent continues to live in this state."

The parents argue that the juvenile court, in entering its dependency judgments in JU-22-10.01, JU-22-11.01, and JU-22-12.01, lacked home-state jurisdiction under § 30-3B-201(a)(1) because the parents and the children had only been in Alabama for six weeks when DHR filed its petitions for protective custody on May 11, 2022. The parents state that they moved to Tennessee during the proceedings and the mother later moved to Georgia. The former foster mother asserts that she qualifies under the UCCJEA as a "person acting as a parent" because, she says, she had "physical custody [of the child] for a period of six consecutive months" before seeking custody and "claims a right to legal custody under the law of this state." § 30-3B-102(13).

Section 30-3B-102(13), a portion of the UCCJEA, defines a "person acting as a parent" as:

A person, other than a parent, who:

> "a. Has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding; and

> "b. Has been awarded legal custody by a court or claims a right to legal custody under the law of this state."

12

The Official Comment to § 30-3B-102 provides that:

"The term 'person acting as a parent' has been slightly redefined. It has been broadened from the definition in the [former Uniform Child Custody Jurisdiction Act, the predecessor to the UCCJEA,] to include a person who has acted as a parent for a significant period of time prior to the filing of the custody proceeding as well as a person who currently has physical custody of the child. In addition, a person acting as a parent must either have legal custody or claim a right to legal custody under the law of this state. The reference to the law of this State means that a court determines the issue of whether someone is a 'person acting as a parent' under its own law. This reaffirms the traditional view that a court in a child custody case applies its own substantive law. The court does not have to undertake a choice-of-law analysis to determine whether the individual who is claiming to be a person acting as a parent has standing to seek custody of the child."

In Patrick v. Williams, 952 So. 2d 1131 (Ala. Civ. App. 2006), this court held that a grandparent may satisfy the requirements set forth in § 30-3B-102(13). The parents in Patrick were divorced by a judgment of the Tallapoosa Circuit Court in 2000. That court, in awarding the mother custody of the children, exercised jurisdiction to make an initial custody determination. See § 30-3B-201. Subsequently, the mother moved to Texas; however, the mother voluntarily placed the children with their grandmother, who still lived in Alabama. Shortly thereafter, the grandmother filed an emergency petition for custody in the Tallapoosa

13

Circuit Court. The father, who also lived in Alabama, filed a response to the grandmother's emergency petition. The father and the grandmother entered into an agreement giving the grandmother pendente lite custody and the father visitation. Ultimately, the Tallapoosa Circuit Court awarded the grandmother custody of the children. This court affirmed the circuit court's judgment awarding permanent custody of the children to the grandmother. We held that the circuit court continued to have jurisdiction to modify custody pursuant to § 30-3B-202 because the grandmother had had physical custody when she initiated the custody proceedings and because the grandmother had claimed a legal right to their custody. Also, the children, the grandmother, and the father had all been living in Alabama at the time the custody proceedings were commenced.

In B.B. v. L.W., 163 So. 3d 1042 (Ala. Civ. App. 2014) (plurality opinion), this court addressed whether the grandmother in that case met the definition of "person acting as a parent" under § 30-3B-102(13), when the grandmother did not have the mother's permission to assume physical custody of the child. In B.B., a Michigan court, in 2002, granted the grandmother legal guardianship of the child with the mother's

14

permission. Subsequently, the grandmother moved with the child to Tuscaloosa, where they lived until 2007, when the child went to live with the mother in Michigan. The mother thereafter allowed the child to visit with the grandmother in Alabama. In June 2011, the mother allowed the child and the child's younger brother to visit in Alabama. The children were scheduled to return to Michigan in August 2011 before the school year began. However, although the grandmother allowed the child's younger brother to return to Michigan, the grandmother detained the child in Alabama.

On July 5, 2012, the mother in B.B. v. L.W. filed an emergency petition in the Tuscaloosa Circuit Court ("the Alabama court") seeking an order compelling delivery of the child to her. The record contained a letter from the Michigan court to the grandmother dated July 2006, informing the grandmother that the guardianship that had been granted to her by that court was valid only as long as she resided in Michigan. The Alabama court determined that it had jurisdiction as the "home state" of the child under the UCCJEA. This court, in addressing the grandmother's argument that she met the definition of a "person acting as a parent" under § 30-3B-102(13), stated:

15

"The grandmother, in reliance on § 30-3B-102(13), asserts that, because the child had been in her physical custody for more than six months at the time the mother filed the petition for a writ of assistance in the trial court, Alabama is the proper jurisdiction in which to determine custody of the child. However, our analysis of the UCCJEA does not simply rest upon the child's residency over the six months preceding the initiation of these proceedings. To be sure, we do not take lightly the allegations that the child had been abused. However, we cannot condone the unilateral decision of a grandparent, or of any party, to deprive a parent of the fundamental right to custody of his or her child with no legal justification. The grandmother did not invoke the temporary emergency jurisdiction of the trial court pursuant to § 30-3B-204(a), Ala. Code 1975, nor did she file a petition asserting that the child was dependent when she first discovered the alleged abuse.

"We are further unpersuaded by the grandmother's argument that § 30-3B-102(13) does not require that the '"claim to legal custody" to be good or bad,' or, in other words, that a person acting as a parent need not have a colorable claim to custody. Citing Smith v. Smith, 922 So. 2d 94, 99 (Ala. 2005), the grandmother asserts that she was standing 'in loco parentis.' Our supreme court decided in Smith that the trial court had erroneously accorded individuals that, although family members, were essentially acting as babysitters in loco parentis status. Id. at 100. The underlying issues in Smith were various tort claims relating to the accidental death of a child; our supreme court did not address whether someone acting in loco parentis satisfied the requirements of the UCCJEA. Id. at 96-100. We agree with the North Dakota Supreme Court that, '[a]bsent a requirement of mandating a colorable claim [to custody], the underlying policies of the UCCJEA and the [Parental Kidnapping Prevention Act] would be frustrated as nonparents execute 'interstate abductions and other unilateral removals of children [ ] to obtain custody and visitation awards." Rogers [v. Platt], [199

16

> Cal. App. 3d 1204,] 1212-13, 245 Cal. Rptr. 532 [ (1988) ].'
> Schirado v. Foote, 785 N.W.2d 235, 244 (N.D. 2010). Based
> upon the foregoing, we conclude that the grandmother did not
> have a legal claim to custody under the laws of this state;
> therefore, she was precluded from 'acting as a parent' as
> defined by § 30-3B-102(13). Therefore, we must conclude that
> Alabama is not the child's home state and that the trial court
> could not have assumed jurisdiction over this matter
> pursuant to § 30-B-201(a)(1)."

B.B. v. L.W., 163 So. 3d at 1048-49 (plurality opinion).

In the present cases, Alabama did not become the home state of the children under § 30-3B-201(a)(1) within six months of the commencement of the three new dependency proceedings. The children did not live in Alabama with their parents for six consecutive months. Two of the children, R.B., Jr., and A.B., lived with the foster mother for six consecutive months, but she was not "a person acting as a parent" at that time. Section 30-3B-102(13) defines "a person acting as a parent" as one who has not only physical custody of a child, but also has legal custody or claims a right to legal custody of the child. During the relevant period, the former foster mother did not have legal custody of the children; moreover, she had agreed not to pursue their legal custody in a foster-parent agreement with DHR. "The nature of the foster care relationship is distinctly different from that of the natural family; namely, it is a

17

temporary arrangement created by state and contractual agreements."

Renfro v. Cuyahoga Cnty. Dep't of Hum. Servs., 884 F.2d 943, 944 (6th Cir. 1989).  Thus, the former foster mother did not qualify as a person acting as a parent while keeping the children in foster care.[2]  The third child, B.B., lived with the foster mother for five months only, so Alabama did not even arguably become his home state at any point.

The fact that the former foster mother is now claiming a right to legal custody of the children does not alter the outcome.  Even if we were to presume that the former foster mother could somehow qualify as "a person acting as a parent" by virtue of filing of the three new dependency petitions, it remains true that she was not "a person acting as a parent" when she was acting as the foster parent for the children in the preceding

---

[2]At least two other states have addressed whether a foster parent is a person acting as a parent under the UCCJEA.  See In re Z.H., 245 W.Va. 456, 859 S.E.2d 399 (2021) (rejecting the West Virginia Department of Health and Human Resources' argument that the foster parents were "persons acting as a parent" for the purposes of establishing home-state jurisdiction because the argument ignored that the child was placed with the foster parents after and as a result of DHHR's proceedings). But see In re Custody of A.C., 165 Wash. 2d 568, 200 P.3d 689 (2009) (holding that the foster parents were "acting as a parent" under the Washington UCCJEA when they had had physical custody of the child for six months and were claiming a clear legal right to custody).

six months, as required for Alabama to become the children's home state.

At the point the former foster mother filed the three new dependency petitions, it appears that no state had home-state jurisdiction over the children. They had moved to Georgia only two weeks earlier, so that state did not have home-state jurisdiction, and, as explained above, Alabama also did not have home-state jurisdiction. In these circumstances, § 30-3B-201(a)(2), providing for significant-connection jurisdiction, would allow the juvenile court to exercise jurisdiction over the three new dependency petitions if:

> "a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

> "b. Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships."

In this case, the parents, who no longer live in Alabama, do not have a significant connection with Alabama. Likewise, it appears that the children do not have any significant connection to Alabama. They were brought to this state in their tender years by their parents and resided here for only six weeks before being placed into foster care. Once the juvenile court determined that the children were not dependent, they

19

immediately moved to Georgia to live with the mother. It appears that the children have no family members in this state other than a distant relative that they have never met. Their only connection appears to be their relationship with the former foster mother, who apparently intended to adopt them, but that connection was severed when the juvenile court ordered the children to be removed from her custody and returned to the mother. Moreover, the former foster mother was not a "person acting as a parent," which is required for significant-connection jurisdiction under § 30-3B-201(a)(2)a.

We note that more-appropriate-forum jurisdiction and last-resort jurisdiction, as set out in §§ 30-3B-201(a)(3) and (a)(4) respectively, do not apply to this case. This is so because neither Georgia nor any other state court have declined to exercise jurisdiction in favor of Alabama nor is Alabama a court of last resort for the former foster mother's petitions.

Conclusion

The juvenile court made its initial custody determinations pursuant to its temporary emergency jurisdiction. Alabama lacked continuing jurisdiction over the former foster mother's custody petitions filed subsequent to the emergency petitions under the UCCJEA. Therefore,

20

CL-2023-0506, CL-2023-0507, and CL-2023-0508

we grant the parents' petitions for writs of mandamus and direct the juvenile court to dismiss the former foster mother's custody petitions based on lack of subject-matter jurisdiction.[3]

CL-2023-0506 -- PETITION DISMISSED IN PART AND GRANTED IN PART; WRIT ISSUED.

CL-2023-0507 -- PETITION DISMISSED IN PART AND GRANTED IN PART; WRIT ISSUED.

CL-2023-0508 -- PETITION DISMISSED IN PART AND GRANTED IN PART; WRIT ISSUED.

Moore, P.J., and Hanson and Lewis, JJ., concur.

Edwards, J., concurs in the result, with opinion.

Fridy, J., recuses himself.

---

[3]We pretermit discussion of the parents' arguments regarding the juvenile court's lack of personal jurisdiction.

EDWARDS, Judge, concurring in the result.

R.B. ("the father") and A.L. ("the mother") have filed in this court petitions for the writ of mandamus seeking review of the Conecuh Juvenile Court's denial of their motions to stay and their motions to dismiss the dependency and custody actions relating to their children, R.B., Jr., A.B., and B.B. ("the children"), which had been filed by the children's former foster mother, B.B.C. ("the former foster mother"), on May 22, 2023.[4] The children had been the subject of previous dependency actions instituted in the Conecuh Juvenile Court ("the juvenile court") in May 2022 by the Conecuh County Department of Human Resources ("DHR").[5]  The juvenile court, in orders entered on May 4, 2023, determined that the children were not dependent, relieved DHR of its temporary legal custody of the children, and ordered that the children be

---

[4]The foster mother's petition relating to R.B., Jr., was assigned case number JU-22-10.02; her petition relating to A.B. was assigned case number JU-22-11.02; and her petition relating to B.B. was assigned case number JU-22-12.02.

[5]DHR's petition relating to R.B., Jr., was assigned case number JU-22-10.01; its petition relating to A.B. was assigned case number JU-22-11.01; and its petition relating to B.B. was assigned case number JU-22-12.01.

returned to the custody of the mother.[6]  DHR appealed from the May 4, 2023, orders.

In August 2023, after the mother and the father had filed their petitions for the writ of mandamus in July 2023, DHR dismissed its appeals.  Therefore, like the main opinion, I conclude that, insofar as the mother and the father request that the dependency and custody actions commenced by the former foster mother be stayed pending the outcome of those appeals, the petitions have been mooted.  See Ex parte Autauga Cnty. Dep't of Hum. Res., 353 So. 3d 542, 547 (Ala. Civ. App. 2021) (determining that issue presented in petition for the writ of mandamus had been mooted by the dismissal of an underlying action).  I would not further discuss the arguments of the mother and the father respecting the request that the former foster mother's actions be stayed.[7]

---

[6]DHR's appeal regarding the order entered in case number JU-22-10.01 was assigned appeal number CL-2023-0300; DHR's appeal from the order entered in case number JU-22-11.01 was assigned appeal number CL-2023-0301; and DHR's appeal from the order entered in case number JU-22-12.01 was assigned appeal number CL-2023-0302.

[7]I note, however, that Ala. Code 1975, § 6-5-440, commonly known as the abatement statute, prohibits a particular plaintiff from prosecuting more than one action for the same cause of action against the same defendant.  See Johnson v. Brown-Service Ins., 293 Ala. 549, 551, 307 So. 2d 518, 520 (1974) (discussing the predecessor statute to § 6-5-

23

However, I am not convinced that the former foster mother's dependency and custody petitions, which make allegations that the children are dependent based on the "failure [of the mother and the father] to comply with [individualized service plans], sexual abuse, domestic violence, mental-health issues, and drug use" and allegations that the mother's fiancé, S.M., "has a criminal history and abuses drugs and alcohol," are sufficient to state new allegations that could support the former foster mother's petitions. The juvenile court heard evidence regarding the conduct of the mother and of the father and of the conduct and character of S.M. at the April 24, 2023, hearing on DHR's dependency petitions.[8] The May 4, 2023, judgments in DHR's dependency actions

---

440, Title 7, §146, Ala. Code 1940 (Recomp. 1958), and stating that the abatement statute "stands for the proposition that a person cannot prosecute two suits at the same time, for the same cause against the same party. The purpose of the rule is to avoid multiplicity of suits and vexatious litigation."). Both parties -- i.e., the plaintiff and the defendant -- must be identical for the statute to bar an action. In this instance, the plaintiffs in the two sets of dependency actions are not identical.

[8]In considering the merits of the petitions, I have considered not only the materials provided in support of the petitions and the answers to the petitions, but also items that are contained in the record in DHR's appeals. See City of Mobile v. Matthews, 220 So. 3d 1061, 1063-64 & n.3 (Ala. Civ. App. 2016) (explaining the circumstances under which an appellate court can take judicial notice of its own records in a different appeal).

24

determined <u>as a matter of fact</u> that the fiancé was stable in his finances, his home, and his employment. A reading of the May 4, 2023, judgments compels the conclusion that the juvenile court determined that the children were not dependent and should be returned to the custody of the mother in part because she was living with S.M., who provided stability for the mother.

The "new and current facts" alleged in the former foster mother's petitions are neither new nor current, and, in fact, are the same allegations that the juvenile court had resolved in favor of the mother in the May 4, 2023, judgments. Thus, I conclude that the former foster mother's petitions should have been dismissed because they were barred by the doctrine of res judicata.

> "In <u>Hughes v. Martin</u>, 533 So. 2d 188 (Ala. 1988), this Court explained the rationale behind the doctrine of res judicata:
>
>> "'"Res judicata is a broad, judicially developed doctrine, which rests upon the ground that public policy, and the interest of the litigants alike, mandate that there be an end to litigation; that those who have contested an issue shall be bound by the ruling of the court; and that issues once tried shall be considered forever settled between those same parties and their privies."
>
> "'533 So. 2d at 190. The elements of res judicata are

> "'"(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions."
>
> "'Equity Res. Mgmt., Inc. v. Vinson, 723 So. 2d 634, 636 (Ala. 1998). "If those four elements are present, then any claim that was, or that could have been, adjudicated in the prior action is barred from further litigation." 723 So. 2d at 636. Res judicata, therefore, bars a party from asserting in a subsequent action a claim that it has already had an opportunity to litigate in a previous action.'"

Ex parte H.A.S., 308 So. 3d 533, 540-41 (Ala. Civ. App. 2020) (quoting

Lee L. Saad Constr. Co. v. DPF Architects, P.C., 851 So. 2d 507, 516-17

(Ala. 2002)).

DHR's concluded dependency actions and the former foster mother's new actions present the same claim -- that the children are dependent based on the conduct of the mother and the father. The May 4, 2023, judgments, which were entered by a court of competent jurisdiction, terminated DHR's dependency actions on the merits by concluding that DHR had failed to establish that the children were dependent. Because the former foster mother's relationship to the children resulted from her being a foster parent licensed by DHR and from DHR's placement of the children in her care, she is a party in privity

with DHR, satisfying the requirement that there be substantial identity of the parties.

In my opinion, the former foster mother alleges no new facts in her petitions, and her petitions were due to be dismissed on the basis of the doctrine of res judicata. I would grant the petitions for a writ of mandamus and direct the juvenile court to dismiss the former foster mother's petitions not because the juvenile court lacked subject-matter jurisdiction but because of the application of the doctrine of res judicata.[9] Accordingly, I concur in the result of the main opinion.

---

[9]I express no opinion on whether the main opinion correctly analyzes subject-matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act, Ala. Code 1975, § 30-3B-101 et seq.