Rel: November 22, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

———————————————

## CL-2024-0381

———————————————

### T.R.

### v.

### Tuscaloosa County Department of Human Resources

### Appeal from Tuscaloosa Juvenile Court
### (JU-23-589.01)

FRIDY, Judge.

T.R. ("the father") appeals from a judgment of the Tuscaloosa Juvenile Court ("the juvenile court") awarding custody of W.R. ("the child") to A.F. and R.F. (collectively "the custodians"). K.T. ("the mother") (with the father, "the parents"), the mother of the child and the cousin of

A.F., was a party at trial but has not appealed the judgment. The father's sole argument on appeal is that the juvenile court lacked subject-matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), § 30-3B-101 et seq., Ala. Code 1975. For the reasons set forth herein, we dismiss the appeal with instructions to comply with § 30-3B-204, Ala. Code 1975.

Background

The child was born in Seattle, Washington, in December 2018; however, the father and the mother have consistently lived in Florida since the child was born. The father lived with the mother and the child for approximately the first year of the child's life. Kayla Moore, a social worker for the Bibb County Department of Human Resources ("DHR"), had testified that the Florida Department of Children and Families ("DCF") implemented a safety plan in response to the mother's use of fentanyl. In July 2020, a Florida juvenile court ("the Florida court") terminated DCF's protective supervision of the child and entered a judgment granting the mother custody of the child subject to the father's supervised visitation; the Florida court expressly retained jurisdiction.

The father testified that he had prior federal convictions related to methamphetamines. The father testified that his most recent drug conviction involved the possession of methamphetamine on federal property in Florida and that he spent approximately nine months in federal custody and was given supervised release in July 2023.

The custodians resided in Alabama. A.F. testified that the mother communicated with her in April 2023 regarding the child. A.F. also testified that the mother stated that the child was "on an out-of-home safety plan" and asked if she and the child could move in with the custodians. The mother and the child began living with the custodians in Alabama in April 2023. A.F. testified that she asked the mother to find different accommodations after she noticed that the mother had a substance-abuse problem. The child continued to reside with the custodians. According to the record, the mother submitted to a pre-employment drug test in May 2023 and subsequently tested positive for fentanyl. The mother returned to Florida three days later.

In June 2023, the mother returned to the custodians' home and demanded that she be allowed to take the child to Florida. DHR responded, despite the custodians residing in Tuscaloosa County; Moore

3

testified that the Tuscaloosa County Department of Human Resources ("Tuscaloosa DHR") had transferred the case to DHR because A.F. was employed by Tuscaloosa DHR. Moore testified that the mother had a "power of attorney" that the mother told her permitted her to have the child and that the mother argued that DHR lacked "jurisdiction to have the child." DHR implemented a safety plan with the mother that provided that the child would remain with the custodians. Moore testified that she spoke with the father on the telephone about the incident and that the father agreed with the safety plan. Moore further testified that neither DHR nor DCF or the Florida court initiated Interstate Compact for the Placement of Children ("ICPC"), § 44-2-20 et seq., Ala. Code 1975, procedures. A.F. testified that DHR did not inquire about ICPC placement for the child. DHR subsequently filed a petition in the juvenile court in August 2023 alleging that the child was dependent.

The juvenile court held a shelter-care hearing on September 11, 2023, and subsequently entered an order finding that an emergency existed, vesting custody with the custodians, awarding separate visitation to the parents, and scheduling a hearing for November 2023. At that November hearing, the juvenile court found the child dependent

4

based on the stipulation of the parties and awarded custody to the custodians subject to the parents' visitation. The juvenile court scheduled a dispositional review for January 2024, which was later continued to March 2024.

In January 2024, the father filed a "Motion for UCCJEA Conference," asserting that the child and parents were residents of Florida in the six months prior to the dependency petition being filed, that the Florida court's dependency case concerning the child was still open, and that there was not an emergency that would give the juvenile court jurisdiction. The father later filed a copy of the Florida court's July 2020 judgment in which that court set the father's original visitation and expressly retained jurisdiction over the case; the father also filed a copy of a motion that he had filed with the Florida court in December 2023 requesting that the visitation schedule that the Florida court ordered in July 2020 be enforced. The record does not indicate whether the Florida court acted on that motion.

The juvenile court held a virtual hearing in February 2024 on whether it had jurisdiction under the UCCJEA. The parties, the Florida court magistrate, a DCF attorney, and a DCF investigator participated

5

at the hearing. The juvenile court subsequently entered an order stating that "[a]fter review and arguments by counsel, Florida relinquished jurisdiction, and Alabama is retaining jurisdiction." The record does not contain a transcript of the hearing or the reason that the Florida court relinquished jurisdiction.

The juvenile court held a dispositional hearing in April 2024; it subsequently entered a judgment finding the child dependent and granted custody of the child to the custodians subject to the parents' visitation. The father appeals.

<u>Analysis</u>

The father's sole argument on appeal is that the juvenile court lacked subject-matter jurisdiction over the case pursuant to the UCCJEA. Whether a juvenile court has subject-matter jurisdiction is a question of law; therefore, we review this issue de novo. <u>H.T. v. Cleburne Cnty. Dep't of Hum. Res.</u>, 163 So. 3d 1054, 1062 (Ala. Civ. App. 2014).

The UCCJEA controls decisions regarding whether a court of this state has jurisdiction to make a child-custody determination or to modify another state's child-custody determination. The UCCJEA defines a "child-custody determination" as "[a] judgment, decree, or other order of

6

a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a[n] initial . . . and modification order." § 30-3B-102(3), Ala. Code 1975.

Florida, like Alabama, has adopted the UCCJEA. See Fla. Stat. § 61.501 et seq. (2024). Florida's version of the UCCJEA has a provision essentially identical to § 30-3B-102(3), Ala. Code 1975. See Fla. Stat. § 61.503(3) (2024). The Florida court, in its July 2020 judgment, expressly provided for the custody of the child, awarded the father visitation, and retained jurisdiction over the matter. Thus, the Florida court made an initial child-custody determination and retained exclusive, continuing jurisdiction. See Fla. Stat. § 61.515 (2024); accord § 30-3B-202, Ala. Code 1975. Accordingly, we must determine whether the juvenile court had jurisdiction to modify the Florida court's child-custody determination.

Section 30-3B-203 provides, in its entirety:

"Except as otherwise provided in Section 30-3B-204, a court of this state may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under Section 30-3B-201(a)(1) or (2) and:

"(1) The court of the other state determines it no longer has continuing, exclusive jurisdiction under Section 30-3B-202 or that a court of this

7

> state would be a more convenient forum under Section 30-3B-207; or
>
> "(2) A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state."

Thus, to modify the Florida court's initial custody determination, the juvenile court must have had jurisdiction under § 30-3B-201, Ala. Code 1975. Section 30-3B-201 provides in relevant part:

> "(a) Except as otherwise provided in Section 30-3B-204, a court of this state has jurisdiction to make an initial child custody determination only if:
>
> > "(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
> >
> > "(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 30-3B-207 or 30-3B-208, and:
> >
> > > "a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this

> state other than mere physical presence; and
>
> > "b. Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships."

The UCCJEA defines "home state" in § 30-3B-102(7), Ala. Code 1975, as:

> "The state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of the child or any of the mentioned persons is part of the period."

Section 30-3B-102(13), Ala. Code 1975, provides that a "person acting as a parent" is

> "[a] person, other than a parent, who:
>
> > "a. Has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding; and
> >
> > "b. Has been awarded legal custody by a court or claims a right to legal custody under the law of this state."

It is undisputed that the child lived in Florida until his mother brought him to Alabama to live with A.F. in April 2023, at which time he

9

was four years old. DHR filed its initial dependency petition in the juvenile court in August 2023, approximately four months after the child arrived in Alabama. Although the mother appears to have intended to stay in Alabama with the child, she returned to Florida in May 2023. The father never resided in Alabama with the child. Therefore, the child did not reside in this state with a parent for at least six consecutive months before the commencement of the child-custody proceeding in Alabama. Similarly, the custodians did not have any form of custody over the child for six consecutive months prior to the filing of the dependency petition. Further, the custodians were not granted any legal custody over the child prior to the filing of the dependency petition, and they did not claim a right to legal custody under the law of this state. Accordingly, the custodians were not "persons acting as a parent" as provided for in the UCCJEA. Therefore, the juvenile court could not have assumed jurisdiction over this matter as a court in the child's home state pursuant to § 30-3B-201(a)(1).

We likewise conclude that the juvenile court was precluded from assuming jurisdiction pursuant to § 30-3B-201(a)(2). As noted above, the child resided in Florida until April 2023, well beyond the six months

required to establish Florida as the child's home state. The Florida court relinquished its jurisdiction at the February 2024 jurisdictional hearing. However, § 30-3B-201(a)(2) provides that even when a court of the home state of the child declines to exercise jurisdiction, a parent or a person acting as a parent must still have a significant connection with this state. Neither parent appears to have such a connection, see Edwards v. Zyla, 207 So. 3d 1232, 1236 (Miss. 2016) (holding that a father who resided in state "for only a couple of months" lacked significant connection to forum state), and, as discussed above, the custodians were not persons acting as parents. Accordingly, the juvenile court lacked jurisdiction under § 30-3B-201(a)(1) and (2). Therefore, the juvenile court lacked jurisdiction to modify the Florida court's initial child-custody determination.

We recognize that the juvenile court may have intended to exercise temporary emergency jurisdiction over the matter pursuant to § 30-3B-204, Ala. Code 1975. "The temporary emergency jurisdiction that an Alabama court may exercise pursuant to § 30-3B-204 is 'extremely limited,' see M.B.L.[v. G.G.L., 1 So. 3d 1048, 1051 (Ala. Civ. App. 2008)], and an Alabama court must comply with the manner of exercising that jurisdiction set out in that section. LaRose v. LaRose, 71 So. 3d 651, 657

11

(Ala. Civ. App. 2011)." J.D. v. Lauderdale Cnty. Dep't of Hum. Res., 121 So. 3d 381, 385 (Ala. Civ. App. 2013). Section 30-3B-204 provides, in its entirety:

"(a) A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

"(b) If there is no previous child custody determination that is entitled to be enforced under this chapter and a child custody proceeding has not been commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

"(c) If there is a previous child custody determination that is entitled to be enforced under this chapter, or a child custody proceeding has been commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under Sections 30-3B-201 through 30-3B-203. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.

"(d) A court of this state which has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, shall immediately communicate with the other court. A court of this state which is exercising jurisdiction pursuant to Sections 30-3B-201 through 30-3B-203, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order."

There is nothing in the record, beyond the juvenile court's initial finding that an emergency existed with respect to the child, indicating that the juvenile court intended to exercise temporary emergency jurisdiction under § 30-3B-204. The juvenile court never specified what type of jurisdiction it was exercising and DHR did not specifically request that the juvenile court exercise temporary emergency jurisdiction. Additionally, if the juvenile court intended to exercise temporary emergency jurisdiction, it did not enter a temporary order that complied with the requirements of § 30-3B-204.

Section 30-3B-110, Ala. Code 1975, provides that when an Alabama court communicates with a court of a different state, a record must be

13

made of that communication as required by § 30-3B-110(d). There is no record of the juvenile court's communication with the Florida court beyond the Florida court magistrate's presence at the jurisdictional hearing. Further, temporary emergency jurisdiction does not authorize the juvenile court to make an award of permanent custody; it is intended to "'protect the child until the state that has jurisdiction under Sections [30-3B-201, 30-3B-202, and 30-3B-203] enters an order.'" B.B. v. L.W., 163 So. 3d 1042, 1050 (Ala. Civ. App. 2014) (plurality opinion) (quoting Official Comment to § 30-3B-204). Accordingly, if the juvenile court intended to exercise its temporary emergency jurisdiction under § 30-3B-204, it failed to follow the correct procedures. Therefore, because the juvenile court failed to obtain subject-matter jurisdiction under the UCCJEA, the juvenile court's final judgment awarding permanent custody of the child to the custodians is void for lack of subject-matter jurisdiction. See G.S. v. R.L., 259 So. 3d 677 (Ala. Civ. App. 2018).

Conclusion

Based on the record before us, the juvenile court did not have subject-matter jurisdiction to modify the Florida court's initial child-custody determination pursuant to § 30-3B-203. Therefore, the juvenile

14

court could modify the Florida court's initial child custody determination only through a temporary order under § 30-3B-204. However, because the juvenile court failed to comply with § 30-3B-204, we find that the juvenile court's award of permanent custody to the custodians is void for lack of subject-matter jurisdiction. We therefore dismiss this appeal with instructions for the juvenile court to vacate its permanent award of custody to the custodians and to revise its earlier orders to a definite and appropriate period for the father to obtain an order from the Florida court. In doing so, we emphasize that a record of communications between the juvenile court and the Florida court should be made pursuant to § 30-3B-110.

APPEAL DISMISSED WITH INSTRUCTIONS

Moore, P.J., and Edwards, Hanson, and Lewis, JJ., concur.